Frank G. Long (#012245)
flong@dickinsonwright.com
Casandra C. Markoff (#033990)
cmarkoff@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 N. Central Avenue, Suite 1400
Phoenix, Arizona 85004-4568
Phone: (602) 285-5000
Fax: (602) 281-5100
Firm Email: courtdocs@dickinsonwright.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BBK Tobacco & Foods, LLP, an Arizona limited liability partnership, d/b/a HBI International,<br><br>                Plaintiff,<br><br>        v.<br><br>Skunk, Inc., a California corporation; Vatra, Inc., a California corporation,<br><br>                Defendants.<br><br>Skunk, Inc., a California corporation,<br><br>                Counterplaintiff,<br><br>        v.<br><br>BBK Tobacco & Foods, LLP, an Arizona limited liability partnership, d/b/a HBI International,<br><br>                Counterdefendant. | No. CV-18-02332-PHX-JAT<br><br>**MOTION TO DISMISS DEFENDANT SKUNK, INC.'S COUNTERCLAIMS FOR CANCELLATION BASED ON FRAUDULENT PROCUREMENT, GENERICNESS, DESCRIPTIVENESS, AND ABANDONMENT**<br><br>**(Oral Argument Requested)** |

1

Plaintiff/Counterdefendant BBK Tobacco & Foods, LLP (the "Plaintiff") hereby submits pursuant to Federal Rules of Civil Procedure 12(b)(6), Plaintiff's Motion to Dismiss Defendant/Counterplaintiff Skunk, Inc.'s ("Defendant") Counterclaims for Cancellation Based on Fraud, Genericness, Descriptiveness, and Abandonment (the "Counterclaims"). This Motion is supported by the following Memorandum of Points and Authorities, the pleadings on file herein, and any oral argument the Court may entertain.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 12.1(C)

Counsel for Plaintiff notified counsel for Defendant of the issues asserted in this Motion via telephone, and the Parties did not agree that the pleading was curable.

### II.  RELEVANT BACKGROUND

Plaintiff designs, markets, and sells tobacco related products, including rolling papers. Doc. 49, First Amended Complaint ("FAC") at ¶ 20. Plaintiff uses the SKUNK and SKUNK BRAND names (the "Skunk Marks") to identify some of its smoking-related products (the "Skunk Products"). FAC at ¶ 21. Plaintiff owns U.S. Patent and Trademark Office ("PTO") registrations for several marks that incorporate the SKUNK and SKUNK BRAND names (the "Registrations"). FAC at ¶ 22.

The Registrations cover a variety of goods including cigarette rolling papers; cigarette lighters not made of precious metal; herbs for smoking; electric or electronic cigarettes or cigars; cigarette tips made of glass, namely smokers' mouthpieces for cigarettes; and pre-rolled smoking tubes made of hemp-based paper (the "Identified

Goods").[1]

In this lawsuit, Plaintiff asserts claims, under the Lanham Act and Arizona common law, against Defendant to enjoin and obtain monetary relief for Defendant's use of the "Skunk" name and "Skunk" name and stylized design as a trademark for various bag products ("Defendant's Skunk Marks"). Plaintiff also seeks an order cancelling the PTO Registration of Defendant's Skunk Marks and refusing the Application to register Defendant's Skunk Marks. FAC, *passim*. Defendant responded by asserting six counterclaims against Plaintiff. *See* Doc. 54, Defendant's Counterclaim.

### III.   SUMMARY OF DEFENDANT'S CLAIMS THAT FAIL

Four of Defendant's counterclaims fail to state a claim upon which relief may be granted for the following reasons.

First, Defendant asserts a counterclaim of fraudulent procurement seeking the cancellation of Plaintiff's PTO Registration No. 2435666 (the "SKUNK BRAND Registration") for alleged false representations by third parties who previously owned the SKUNK BRAND Registration. Counterclaim at ¶¶ 231-48. In a conclusory fashion, Defendant alleges that these representations were false because, "[u]pon information and belief, at the time of the [use representations were] submitted to the USPTO, the SKUNK BRAND mark was not in use in commerce in the United States." *Id.* at ¶¶ 234, 239, 244. Defendant provides no facts to support such an allegation nor does Defendant allege that Plaintiff participated in the alleged fraudulent scheme. *Id.*, *passim*.

---

[1] Plaintiff sells a variety of other tobacco accessories goods under the Skunk Marks as well, which are not currently covered by a PTO registration. *See* FAC, Exhibit A.

3

Second, Defendant asserts counterclaims seeking full cancellation of all five of the Registrations because Defendant alleges the marks are generic terms for the products they identify. *Id.* at ¶¶ 253-263, 269-278, 284-292, 298-306, 309-317. In support of this claim, Defendant alleges that "Skunk" is the generic term for cannabis,[2] and, because some consumers allegedly use the identified Skunk Products with cannabis, the "Skunk" name "denotes that [Plaintiff's Skunk Products are] to be used with cannabis or marijuana." *Id.* Defendant then concludes that the terms SKUNK and SKUNK BRAND are "generic as members of the relevant public would understand the term 'skunk' to identify a subset of these items [(the Identified Goods)]—namely those to be used in conjunction with cannabis products." *Id.*

Third, Defendant asserts three counterclaims each seeking full cancellation of one of three the Registrations because the marks are allegedly merely descriptive of the products they identify.[3] *Id.* at ¶¶ 284-292, 298-306, 309-317. The allegations supporting those claims merely assert that the Skunk Marks "describe a quality, characteristic, function, feature, purpose, or use of the specified goods (namely, the ability to use the product with cannabis or marijuana)." *Id.* at ¶ 222. This allegation is not support by any facts to support the plausibility of a descriptiveness claim against the marks in the

---

[2] For the purposes of this Motion to Dismiss only, Plaintiff accepts this allegation as true. However, based on its own brief research, Plaintiff believes that Defendant's allegation is incorrect and that the only connotation of "Skunk" in the cannabis industry is to refer the "skunky" aroma of burning cannabis. Moreover, Plaintiff sells its products to consumers for use with tobacco and legal smokeable herbs.

[3] If Plaintiff's Skunk Marks are descriptive, then so are Defendant's. Logic demands that conclusion. Plaintiff, however, has been established long enough to establish secondary meaning, which protects the Skunk Marks as trademarks. Defendant has not.

4

Registrations.

Defendant's fourth counterclaim seeks cancellation of the SKUNK BRAND Registration because Plaintiff allegedly abandoned its use of six out of eight goods identified in that Registration. *Id.* at ¶¶ 249-252. It is unclear whether Defendant seeks full or partial cancellation of the SKUNK BRAND Registration targeted by this claim. If the counterclaim seeks full cancellation, Defendant is not entitled to such relief since it only alleges partial abandonment of some but not all of the goods identified in the Registration, as explained below.

All four of these counterclaims fail to state a claim.

## IV.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), claims must "contain sufficient factual matter, accepted as true 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A plausible pleading contains "factual content that allows the court to draw the reasonable inference that the [defending party] is liable for the misconduct alleged" *Iqbal*, 556 U.S. at 678.  A pleading may be dismissed as a matter of law due to lack of a cognizable legal theory or insufficient facts to support a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984). Importantly, the court draws "on its judicial experience and common sense" to determine in the specific context of the case whether the facts, taken as true, establish a plausible claims for relief. *Id.* at 679.

Fraud requires an even higher standard of pleading. Fed. R. Civ. Pro. 9(b).  A claim

5

for fraud must "state with particularity the circumstance constituting fraud." *Id.* The claim must be pled with "a high degree of meticulousness." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000). *See also, e.g.*, *Treatch v. Nextel Commc'ns, Inc.*, 1999 WL 33283820, at *1 (D. Ariz. Aug. 13, 1999) ("a charge of fraud on the PTO is subject to the strict pleading requirements of Rule 9(b)").

## V.   LEGAL ANALYSIS

Defendant failed, under the applicable pleading standard, to adequately plead Defendant's counterclaims for fraud, genericness, descriptiveness, and abandonment.

### A.   Defendant Failed to Adequately Plead a Claim for Fraud

A claim for fraudulent procurement of a trademark registration requires evidence of: (1) the registrant's false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce PTO reliance upon the misrepresentation; (4) the PTO's actual, reasonable reliance on the misrepresentation; and (5) damages to the registrant proximately caused by that reliance. *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013).

Defendant's claim for fraudulent procurement fails for at least two independent reasons. First, Defendant failed to allege that Plaintiff itself made any representation or participated in any fraudulent act or that Plaintiff itself intended to induce PTO reliance on any false representation. Second, Defendant failed to allege sufficient facts to support a basis for alleging a *false* representation.

#### *1.   Defendant's Failure to Allege Plaintiff's Participation or Intent*

To create a reasonable inference of liability, the claimant must identify the accused

6

party's participation in the alleged fraudulent conduct. *See, e.g.*, *CheckOut Holdings, LLC v. Amplified Holdings, Inc.*, 64 F. App'x 631, 632 (9th Cir. 2003) ("[a] complaint must allege that *the defendant* made false or misleading statements either intentionally or with deliberate recklessness.") (emphasis added); *cf Swartz v. KPMG LLP,* 476 F.3d 756, 764–65 (9th Cir. 2007) ("In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme.").

Here, Defendant identified the alleged fraud of others, but not Plaintiff. In fact, Defendant did not make a single allegation that Plaintiff itself made *any* representation to the PTO, let alone a false one. Counterclaim, *passim*. Yet, the making of a false representation to the PTO is a fundamental element of a claim for fraudulent trademark procurement.

Also, Defendant did not plead that Plaintiff itself had any knowledge or intent to induce reliance on a false representation either. Counterclaim at ¶¶ 231-248. That knowledge or intent is another necessary element of a fraud claim. *Hokto Kinoko*, 738 F.3d at 1097.

Taking all of Defendant's fraud allegations as true, Defendant simply did not plead facts sufficient to allow a court to even infer Plaintiff's liability for the alleged misconduct. *Id.* As a result, Defendant fails to state a fraud claim against Plaintiff and the Court should dismiss the counterclaim with prejudice.

### 2. *Defendant's Failure to Allege Sufficient Facts to Support a Fraud Claim*

For a fraud claim, "[a]llegations made on 'information and belief' are not sufficient

7

'unless the complaint sets forth the facts on which the belief is founded.'" *ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, 2011 WL 6296833, at *3 (D. Ariz. Dec. 16, 2011); *Puri v. Khalsa*, 674 F. App'x 679, 687 (9th Cir. 2017); *CheckOut Holdings, LLC v. Amplified Holdings, Inc.*, 64 F. App'x 631, 632 (9th Cir. 2003) ("if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.").

Here, Defendant did not allege a *single fact* that would support its claim for fraud. Defendant supports its allegation of a *false* representation – a vital element for fraudulent procurement – *solely* with the following unsupported allegation:

> "[o]n information and belief, at the time the [the alleged three representations of use were] submitted to the USPTO, the SKUNK BRAND mark was not in use in commerce in the United States on or in connection with at least one of the following items: 'cigarettes,' 'tobacco,' 'snuff,' 'pipes for smoking,' and/or 'matches.'" Counterclaim at ¶¶ 239, 241, 244.

Defendant did not provide any *facts* to support this non-use allegation. Defendant's Counterclaim is totally devoid of any *facts* even suggesting the non-use of these goods at the time of each alleged representation to the PTO. Counterclaim at ¶¶ 231-248.

The law in the Ninth Circuit is clear, a conclusory statement preceded by "on information and belief" alone simply cannot satisfy the heightened requirements of pleading the fraud. *CheckOut Holdings,* 64 Fed. App'x at 632.

Defendant also does not even specify which of the goods in the Skunk Brand Registration were not in use at the time of each of the alleged three representations. Instead, Defendant qualifies its allegations of a false representation by stating "at least

8

one" of the goods was not in use at the time of each of the four use representations to the PTO. Counterclaim at ¶¶ 239, 241, 244. That is sufficient.

Defendant has not alleged sufficiently the key element of a fraud claim: an actual false representation of fact. Defendant's allegations are more speculation, appear as more of a gamble or fishing expedition than a well-founded belief based on specific fact. Accordingly, Defendant's claim for fraud fails and should be dismissed with prejudice. *ThermoLife*, 2011 WL 6296833, at *4 (dismissing claim based on fraud for failure to meet Rule 9 pleading standards).

### B.  Defendant Fails to State a Claim for Genericness

To state a claim for cancellation based on genericness, the claimant must allege that the mark is "the generic name *for the goods* or services *for which it is registered*." 15 U.S.C. § 1064(3) (emphasis added). "In this way, the Lanham Act plainly required that a claim of genericide relate to a *particular* type of good." *Elliott v. Google, Inc.*, 860 F.3d 1151, 1157 (9th Cir. 2017), *cert. denied,* 138 S. Ct. 362 (2017) ("If there were no requirement that a claim of genericide relate to a particular type of good, then a mark like IVORY, which is 'arbitrary as applied to soap,' could be cancelled outright because it is 'generic when used to describe a product made from the tusks of elephants.'").

Courts in the Ninth Circuit use the "who-are-you" or "what-are-you" test to determine a generic term for a particular product. *Filipino Yellow Pages, Inc. v. Asian Journal Publications*, Inc., 198 F.3d 1143, 1147 (9th Cir. 1999). A valid trademark "answers the buyer's questions Who are you? Where do you come from? Who vouches for you?" *Id.* (internal quotes omitted). "But the generic name of the product answers the

9

question What are you?" *Id.* In other words, generic terms are "common descriptive" names for what a product is. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 718 F.2d 327, 329 (9th Cir. 1983), *rev'd on other grounds,* 469 U.S. 189 (1985).

It follows then that the generic term for one product does not make it the generic term of another product solely by association. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9–10 (2d Cir. 1976) ("applied to specific types of clothing 'safari' has become a generic term . . . 'safari' has not, however, become a generic term for boots or shoes"); *Comic Strip, Inc. v. Fox Television Stations, Inc.*, 710 F. Supp. 976, 978 (S.D.N.Y.1989) ("As applied to a serial in the funny pages, the words 'comic strip' might be deemed . . . generic.  As applied to a nightclub providing live comedy entertainment, however, the terms take on another meaning").

Here, Defendant does not allege that the term "skunk" is the generic term for the Identified Goods. Rather, Defendant alleges that the term "Skunk" is a generic term for "cannabis (marijuana) and/or certain high THC strains of cannabis." Answer at ¶ 254. Defendant then admits that Plaintiff owns PTO Registrations of the SKUNK name as a mark for the Identified Goods, none of which are cannabis or THC strains of cannabis. *See* FAC, *passim*; Answer, *passim*.  In fact, Defendant admits the Identified Goods include only: cigarette rolling papers; cigarette lighters not made of precious metal; (non-cannabis or THC) herbs for smoking; electric or electronic cigarettes or cigars; cigarette tips made of glass, namely smokers' mouthpieces for cigarettes; or pre-rolled smoking tubes made of hemp-based paper. *See* Counterclaim, *passim*.

In essence, Defendant's counterclaim alleges that, because "skunk" is a slang term

for cannabis and because some consumers may choose to use Plaintiff's Skunk Products in conjunction with cannabis, the word "skunk" is the generic term for the Identified Goods, none of which is "cannabis (marijuana) and/or certain high THC strains of cannabis." Counterclaim, *passim*.

Taking all of allegations of Defendant's counterclaim a true, the counterclaim fails to state a claim that Plaintiff's SKUNK® and SKUNK BRAND® marks are generic names for the Identified Goods. The law is clear: a generic term answers the question "what are you?" *Filipino Yellow Pages*, 198 F.3d at 1147. The applicable question is not "what are you used in conjunction with?"

The law on genericness simply does not support tagging one product with another product's generic name. The generic term for one product does not make it the generic term of another product solely by association. *See Abercrombie & Fitch Co.,* 537 F.2d at 9–10; *Comic Strip, Inc.* 710 F. Supp. at 97. Taking all Defendant's allegations as true, Defendant fails to state a claim for genericness.

### C. Defendant Fails to State a Plausible Claim for Descriptiveness

#### *1. As a Matter of Law, Defendant Cannot Challenge Plaintiff's SKUNK BRAND Registrations as Descriptive of "Cigarette Rolling Papers"*

Under the Lanham Act, the right of an owner of a registered mark becomes incontestable, the mark has been in continuous use in commerce for five consecutive years subsequent to the issuance of the registration for the goods on or in connection with them. 15 U.S.C. § 1056. An incontestable mark may not be challenged as merely descriptive. 15 U.S.C. § 1115(b); *see also Park N' Fly*, 469 U.S. at 662 ("The language of the Lanham

11

Act also refutes any conclusion that an incontestable mark may be challenged as merely descriptive."); *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1135 (9th Cir. 2006) ("defendant in a trademark infringement action cannot assert that an incontestable mark is invalid because it is descriptive.").

Here, Plaintiff owns an eighteen-year-old PTO registration for SKUNK BRAND® covering, among other goods, "cigarette rolling papers." *See* Reg. No. 2435666. Thus, Plaintiff possesses incontestable rights to the SKUNK BRAND® mark used on or in connection with cigarette rolling papers.

However, Defendant's counterclaim challenges as descriptive Plaintiff's Registration No. 5344903 of SKUNK BRAND® covering "hemp-based wrap for smoking, namely cigarette rolling papers." Counterclaim at ¶ 222; *see, e.g.*, *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1265 (S.D. Cal. 2018) ("Courts have extended protection against descriptiveness challenges to a mark in an incontestable registration to a contestable registration if the marks are iterations of the same mark and for the same goods or services."). The use of this mark in connection with cigarette rolling papers is unquestionably an incontestable right of Plaintiff's that cannot be challenged as descriptive. To the extent Defendant is seeking full cancellation of Plaintiff's Registration No. 5344903 based on its descriptiveness claim, its fails to state a viable claim.[4]

---

[4] Unless the Court dismisses Defendant's descriptiveness claims entirely as requested below, Plaintiff has no objection to a motion by Defendant to amend its Counterclaim to exclude "hemp-based wrap for smoking, namely, cigarette rolling papers" from its descriptiveness counterclaim and to specify that the counterclaim seeks only a partial cancellation of Registration No. 5344903 to remove other identified goods on descriptiveness grounds.

### *2.  Defendant's Other Allegations of Descriptiveness also Fail*

To adequately plead that a mark is descriptive, the claimant must allege that the mark "describes the qualities or characteristics of a good" identified by the mark. *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1114 (9th Cir. 2010); *Park 'N Fly*, 469 U.S. at 194.  To be descriptive, a mark must "define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood." *Zobmondo*, 602 F.3d at 1114; *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141-42 (9th Cir. 2002).

To support its descriptiveness counterclaim, Defendant alleges that the term "skunk" is descriptive of the following identified goods because of "the *ability* to use the product[s] with cannabis or marijuana;" cigarette rolling papers; electric or electronic cigarettes or cigars; cigarette tips made of glass, namely smokers' mouthpieces for cigarettes; ceramic screens for e-cigarettes; pre-rolled smoking tubes made of hemp-based paper, namely cigarette tubes; hemp-based wraps for smoking, namely, cigarette rolling papers; and hemp cones. Counterclaim at ¶ 222 (emphasis added).

There is nothing straightforward about the connection Defendant alleges exists between Plaintiff's Skunk Marks and the Skunk Products identified by the marks. Rather, the alleged connection between the term "skunk" and the potential use of Plaintiff's Skunk Products for cannabis consumption requires, at a minimum, an "extra step" of reasoning and certainly the exercise of some imagination by consumers.

Such an extra step precludes any finding that Plaintiff's marks are descriptive, as Defendant's counterclaim alleges. Instead, the facts confirm Plaintiff's Skunk Marks are,

13

at least, suggestive marks. Suggestive marks are those for which "a consumer must use imagination or any type of multistage reasoning to understand the mark's significance . . . (because) the mark does not describe the product's feature, but suggests them." *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n. 8 (9th Cir. 1998); *Zobmondo*, 602 F.3d at 1113 ("Suggestive, arbitrary, and fanciful marks are considered 'inherently distinctive' and are automatically entitled to federal trademark protection because 'their intrinsic nature serves to identify a particular source of a product.'").[5] "Whether a mark suggests or describes the goods or services of the trademark holder depends [on] what those goods or services are." *Entrepreneur*, 279 F.3d at 1142; *Self–Realization Fellowship Church v. Ananda*, 59 F.3d 902, 911 (9th Cir. 1995) (observing that the mark "recovery" in the self–help context is descriptive, but the same mark is suggestive when used as the name of a business teaching counselors to teach self-help because of the "extra step" in connection). Moreover, "[w]here the PTO issues a registration without requiring proof of secondary meaning, the presumption is that the mark is inherently distinctive." *Zobmondo*, 602 F.3d at 1113.

Taking Defendant's allegations as true, Defendant's counterclaim itself establishes that Plaintiff's mark qualifies as a suggestive mark, not a descriptive mark. Defendant's allegations of descriptiveness reveal that consumers must use imagination or multistage reasoning to understand the mark's significance with the slang meaning of "skunk." Such

---

[5] Arbitrary and fanciful marks have no intrinsic connection to the product with which the mark is used. Arbitrary marks consist of words commonly used in the English language. *See, e.g.*, *Fleischmann Distilling,* 314 F.2d 149 ("Black & White" scotch whiskey). Fanciful marks are wholly made-up terms. *See, e.g.*, *Clorox Chem. Co. v. Chlorit Mfg. Corp.,* 25 F. Supp. 702 (E.D.N.Y.1938) ("Clorox" bleach).

a tiered evaluation is the antithesis of descriptiveness and confirms, as a matter of Defendant's allegations and admissions, that the "skunk" name fails to describe some quality or characteristic of the Skunk Products themselves. That conclusion is confirmed by the admitted fact that the PTO issued no less than five separate registrations for Plaintiff's Skunk Marks, establishing presumptive inherent distinctiveness five times over. *Id.*

In ruling on a motion to dismiss, the Court may draw on common sense and juridical experience to determine the implausibility of a claim in a specific context. *Iqbal*, 556 U.S. at 679. Plaintiff's Skunk Marks, which have received PTO registrations, have prima facie evidence of distinctiveness. On its face, Defendant's counterclaim states that Plaintiff's Skunk Marks are suggestive marks, not descriptive marks. Accordingly, Defendant fails to state a plausible claim for descriptiveness and the Court should dismiss the counterclaim with prejudice.

### 3. *Defendant's Descriptiveness Claim also fails because it Does Not Adequately Allege a Lack of Secondary Meaning*

Even a descriptive mark is protectable if the mark has acquired secondary meaning, which means the mark is associated with a specific producer. *Filipino Yellow Pages*, 198 F.3d at 1147. Thus, to prevail on a descriptiveness claim, a claimant must plead that the challenged mark does not have the necessary secondary meaning with at least some facts, not just conclusory allegations. *See Spirit Clothing Co. v. Jerry Leigh of California, Inc.*, 2017 WL 5891056, at *4 (C.D. Cal. June 30, 2017) ("[Defendants] simply assert that Spirit's declaration is false because the Jersey Design 'does not consist of any unique design element which consumers would be able to recognize as a source indicator for

Spirit's (or anyone else's) goods.' . . . Without factual allegations. Defendants have failed to sufficiently plead Spirit's false representation of inherent distinctiveness or secondary meaning.").

Here, Defendant only alleges the legal conclusion that Plaintiff's Skunk Marks "lack secondary meaning" without any factual allegations. Counterclaim at ¶ 222. This is not enough to state a plausible claim for cancellation based on descriptiveness. Lack of secondary meaning is necessary for a successful claim and, for this reason, Defendant's descriptiveness counterclaim fails.

**D.  Defendant has Failed to State a Claim for Full Cancellation Based on Partial Abandonment**

The abandonment of only some goods in a registration provides grounds to seek only the partial cancellation of a registration. *See Vans, Inc.*, No. CANCELLATION 9206685, 2019 WL 367777, at *2 (Jan. 28, 2019) (distinguishing claims for partial and full cancellation based on allegations of full or partial abandonment of goods); *Monster Cable Prod., Inc. v. Discovery Commc'ns, Inc.*, 2004 WL 2445349, at *4 (N.D. Cal. Nov. 1, 2004) ("this order finds that MCP has continually used the marks . . . with respect to at least some of the goods listed in their registrations. . . . This means that full cancellation of the mark is precluded. The only issue remaining for trial is whether MCP abandoned use as to specific goods warranting a *partial* cancellation with respect thereto.") (emphasis in original); *Aries Systems Corp. v. World Book Inc.*, 1993 WL 222336, 8 (March 1, 1993) ("the owner of a registration for goods broadly described, who has not commenced use on the full range of goods encompassed by the recitation, may be held to have abandoned its mark, *for those goods*.") (emphasis added); *see also DAK Indus. Inc. v. Daiichi Kosho*

16

*Co.*, 35 USPQ2d 1434, 1438 (TTAB 1995) (a claim for partial cancellation based on abandonment on some but not all of the identified goods requires an allegation of abandonment "as to the particular goods or services").

Yet, Defendant's counterclaim seeking cancellation of the PTO registration of Plaintiff's SKUNK BRAND® mark for alleged "abandonment," seeks complete cancellation even though it alleges the abandonment of only six out of the eight goods listed in the Skunk Brand Registration. Counterclaim at ¶ 251.

Even if true, Defendant's allegations of partial abandonment can establish only a partial cancellation of the PTO Registration targeted by the counterclaim. By seeking a full cancellation of the PTO registration of Plaintiff's Skunk Brand Registration based on an allegation of only partial abandonment of the mark, Defendant's counterclaim fails to state a claim. Accordingly, the counterclaim should be dismissed under Rule 12(b)(6).

## VI.  CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court dismiss, with prejudice, Defendant's claims for fraudulent procurement, genericness, descriptiveness, and abandonment claim for full cancellation.

DATED this 18th day of June 2019.

Respectfully submitted,

*/s/ Casandra C. Markoff*
Frank G. Long
Casandra C. Markoff
**DICKINSON WRIGHT PLLC**
1850 N. Central Avenue, Suite 1400
Phoenix, Arizona 85004-4568
*Attorneys for Plaintiff*

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2019, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

By: */s/ Veronica S. Newbanks*

PHOENIX 58183-60 563985v6