WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BBK Tobacco & Foods LLP, | No. CV-18-02332-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Skunk Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff BBK Tobacco & Foods LLP's ("BBK") Motion to Dismiss Defendant Skunk, Inc.'s ("Skunk") Counterclaims. (Doc. 64). Skunk has responded, (Doc. 73), and BBK has replied, (Doc. 85). The Court now rules on the motion.

**I.   BACKGROUND**

BBK designs, markets, and sells various smoking-related products and accessories. (Doc. 46 at 2). In connection with that business, BBK currently holds the following registrations with the U.S. Patent and Trademark Office ("PTO"):

- Registration Number: 2435666 ("Reg. No. '666")
  Mark: SKUNK BRAND
  For: cigarette rolling papers, cigarettes, tobacco, snuff, pipes for smoking, cigarette lighters not of precious metal, and matches
  On: Dec. 28, 1999 (Doc. 1 at 3-4 ¶ 21(a))
- Registration Number: 4436677 ("Reg. No. '677")

        Mark: SKUNK

        For: cigarette lighters not of precious metal, cigarette papers, cigarette rolling machines, cigarette rolling papers, cigarette tubes, cigarettes containing tobacco substitutes not for medical purposes, herbs for smoking, machines allowing smokers to make cigarettes by themselves, and pocket apparatus for self-rolling cigarettes

        On: Nov. 19, 2013 (*Id.* at ¶ 21(b))

- Registration Number: 4569712 ("Reg. No. '712")

        Mark: SKUNK

        For: electronic cigarettes, electronic cigarettes for use as an alternative to traditional cigarettes, and electronic cigars

        On: July 15, 2014 (*Id.* at ¶ 21(c))

- Registration Number: 5344902 ("Reg. No. '902")

        Mark: SKUNK BRAND

        For: cigarette tip made of glass, namely, and smokers' mouthpieces for cigarettes

        On: Nov. 28, 2017 (*Id.* at ¶ 21(d))

- Registration Number: 5344903 ("Reg. No. '903")

        Mark: SKUNK BRAND

        For: pre-rolled smoking tube made of hemp-based paper and hemp-based wrap for smoking

        On: Nov. 28, 2017 (*Id.* at ¶ 21(e))

      BBK filed a complaint in this Court alleging that Skunk—a business that sells various smell-proof bags—is infringing BBK's trademark rights in each of these marks "by using the Skunk name in promoting, advertising, distributing, selling, and offering to sell [its] 'smell proof' bag products." (Doc. 1 at 7 ¶ 49). In response, Skunk raised five counterclaims seeking cancellation of BBK's registrations. (Doc. 54 at 43-62).

      As pertinent here, Skunk alleged that: (1) Reg. No. '666 should be cancelled for

fraudulent procurement; (2) Reg. Nos. '712, '902, and '903 should be cancelled for being merely descriptive; (3) all the registrations should be cancelled for genericness; and (4) Reg. No. '666 should be cancelled for abandonment. BBK now moves to dismiss these counterclaims under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted. The Court will address each counterclaim in turn.

## II. DISCUSSION

### A. Legal Standard

When a claim either lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory, the Court must grant a motion to dismiss for failure to state a claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Only a complaint that satisfies Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief," will survive a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although Rule 8 "does not require 'detailed factual allegations,'" it requires "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). In other words, the complaint must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A complaint shows facial plausibility when it pleads factual content that allows a court to draw reasonable inferences as to the defendant's liability. *Id.* (quoting *Twombly*, 550 U.S. at 556). But when "a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In sum, "the pleading must state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged]." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alteration in original) (quoting *Twombly*, 440 U.S. at 556).

Finally, the Court must accept as true all well-pleaded factual allegations. *Iqbal*, 556 U.S. at 679. Pleadings that offer no more than legal conclusions, however, are not entitled that same assumption. *Id.*

**B. Skunk's Counterclaim for Cancellation Based on Fraudulent Procurement**

Citing cases discussing fraud in other areas, BBK first argues that Skunk's counterclaim for cancellation based on fraudulent procurement must be dismissed on the basis that Skunk only "identified the alleged fraud of others, but not [BBK]." (Doc. 64 at 7). In the alternative, BBK argues that Skunk's counterclaim failed to comply with the pleading requirements of either Rule 8(a)(2) or Rule 9(b). (Doc. 64 at 7-9).

### i. Whether Skunk must allege that BBK committed fraud

To consider BBK's first contention, namely, that Skunk must allege BBK engaged in fraud in order to state a claim for cancellation based on fraudulent procurement, the Court must begin with the plain language of 15 U.S.C. § 1064(3) which governs such claims. *Dean v. United States*, 556 U.S. 568, 572 (2009) (explaining that statutory interpretation must begin with the statutory language); *see also In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) ("[A]ny 'duty' owed by an applicant . . . must arise out of the statutory requirements of the Lanham Act . . . ." (quoting *Bart Schwartz Int'l Textiles, Ltd. v. FTC*, 289 F.2d 665, 669 (C.C.P.A. 1961)). The statue provides that an aggrieved party may "petition to cancel a registration of a mark . . . [a]t any time if . . . its registration was obtained fraudulently." 15 U.S.C. § 1064(3). Because the statute broadly speaks of "registration[s] . . . *obtained* fraudulently," without reference to the registration's current owner, its plain language authorizes cancellation of a registration so long as the actor who first obtained the registration did so fraudulently. *Cf. Dean*, 556 U.S. at 572 (reasoning that statute stating "if the firearm is discharged" centered "on an event that occurs without respect to a specific actor"). To read the statute as limiting fraudulent procurement claims to only those situations where the registration's current owner committed fraud, would require reading into the statute the words "by the current owner." Doing so, however, would violate a basic tenet of statutory interpretation—"a court should not add language to an unambiguous statute absent a manifest error in drafting or unresolvable inconsistency." *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 590 (9th Cir. 1981). Therefore, nothing in the plain language of the statute suggests that a party seeking to cancel a registration based on

fraudulent procurement must specifically allege that the current owner engaged in wrongdoing; instead, it indicates that a fraudulently procured registration may be cancelled regardless of whether it has since changed hands.

Further, the limitation BBK argues for would conflict with the policy behind 15 U.S.C. § 1064(3). "[T]he interest vindicated by [§ 1064(3)] is not just the injury to the challenging party, but the integrity of the register." *Cf. Marshak v. Treadwell*, 240 F.3d 184, 194 (3d Cir. 2001) (explaining why statute of limitations defenses do not apply in fraudulent procurement cases). As Skunk rightly points out, if § 1064(3) immunized marks from cancellation whenever they changed hands, bad actors could fraudulently procure registrations using shell companies and then transfer the registration between them, harming the public interest in the register's integrity by allowing fraudulently procured registrations to linger there. Because § 1064(3) does not turn on whether the registration's current owner committed any fraud when it was obtained, Skunk was not required to allege fraud on BBK's part, and thus the Court will not to dismiss Skunk's counterclaim for cancellation based on fraudulent procurement on that ground.

### ii. Sufficiency of Facts

BBK argues further that Skunk pleaded insufficient facts to state a counterclaim for cancellation based on fraudulent procurement because: (1) allegations made "on information and belief" do not satisfy Rule 9(b)'s heightened pleading requirements and (2) Skunk's counterclaim failed to sufficiently allege which goods were out-of-use when the representations were made to the PTO or "an actual false representation of fact." (Doc. 64 at 7-9).

A prima facie case of fraudulent procurement requires "(1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013) (citing *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990)). In addition to Rule

8(a)(2), fraud claims must comply with Rule 9(b) by alleging "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In the Ninth Circuit, pleadings satisfy Rule 9(b) when they "identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso*, 637 F.3d at 1055 (alteration in original) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). Claims made on information and belief are sufficiently particular when they state the facts on which the belief is founded. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010); *see also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (explaining that this rule is "relaxed as to matters within the opposing party's knowledge").

Here, Skunk complied with the requirements of Rule 8(a)(2) and Rule 9(b). Although many of its allegations do begin with "on information and belief," they still sufficiently explain the "who, what, when, where, and how" of the alleged fraud, and why it was false. For example, the counterclaim identified three specific documents and the dates that they were submitted to the PTO. (Doc. 54 at 44-47 ¶¶ 232, 238, 243). It explained that each document contained statements, from prior applicants for and holders of Reg. No. '666, claiming that the SKUNK BRAND mark was used in commerce or in connection with cigarette rolling papers, cigarettes, tobacco, snuff, pipes for smoking, cigarette lighters not of precious metal, and matches. (*Id.*). Skunk alleged further that these statements were each false because BBK's predecessors in interest had not used the mark in connection with at least some of the products (cigarettes, tobacco, snuff, pipes for smoking, and/or matches) it claimed to. As the purported sellers, the reasonable inference is that BBK's predecessors would have known that their representations to the PTO were false. Thus, Skunk adequately pleaded its allegations under Rule 9(b) and, presuming the truth of these allegations, stated a claim for relief that is plausible on its face.

Although BBK is correct that Skunk did not specify exactly how many of the goods were out of use at the time of each representation to the PTO, Rule 9(b) does not require

mathematical perfection; it requires only "that 'allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)). As explained above, Skunk's allegations certainly pass this bar. Moreover, whether a registration may be canceled for fraud does not turn on the quantity of fraudulent statements made, so long as even one statement satisfies all of the elements. Therefore, the Court rejects BBK's argument that Skunk was required to specify how many of the goods were out of use in order to comply with Rule 9(b).

Accordingly, the Court will not dismiss Skunk's counterclaim for cancellation of Reg. No. '666 based on fraudulent procurement.

### C. Skunk's Counterclaims for Cancellation Based on Genericness

BBK also argues that all of Skunk's counterclaims for cancellation based on genericness must be dismissed, contending that Skunk has "not allege[d] that the term 'skunk' is the generic term for" any of the goods listed in BBK's registrations. (Doc. 64 at 10). BBK continues, arguing that Skunk has alleged only that "skunk" is a generic term for cannabis, and none of BBK's wares fall within that category. (Doc. 64 at 1-2). Skunk responds that when the word "skunk" is used in conjunction with smoking paraphernalia, the relevant public would understand it to signify the goods as being appropriate for use with cannabis. (Doc. 73 at 7).

Trademark law protects distinctive marks only. *See Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010).[1] The law generally classifies marks into the following categories, ranked in order of increasing distinctiveness: "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful terms." *Elliott v. Google, Inc.*, 860

---

[1] *See generally Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609 (7th Cir. 1986) ("The goal of trademark protection is to allow a firm to affix an identifying mark to its product (or service) offering that will, because it is distinctive and no competitor may use a confusingly similar designation, enable the consumer to discover in the least possible amount of time and with the least possible amount of head-scratching whether a particular brand is that firm's brand or a competitor's brand.").

F.3d 1151, 1155 (9th Cir. 2017) (citing *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999)). "Suggestive, arbitrary, and fanciful marks are considered 'inherently distinctive' and are automatically entitled to federal trademark protection because 'their intrinsic nature serves to identify a particular source of a product.'" *Zobmondo*, 602 F.3d at 1113 (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)).

On the other hand, "[t]he generic name of a product—what it is—can never serve as a trademark." *Official Airlines Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993) (citing *Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1014 (9th Cir. 1979)). This principle "allays fears that producers will deplete the stock of useful words by asserting exclusive rights in them." *See New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 306 (9th Cir. 1992); *see also Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153, 1157 (7th Cir. 1996) ("We have repeatedly recognized that '[t]o allow a producer of goods to usurp a generic term as a protectable trademark would prevent competitors from *describing* their own goods adequately'" (collecting cases)) (alteration in original); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir. 1976) (explaining that generic terms are not entitled to trademark protection "since this in effect would confer a monopoly not only of the mark but of the product by rendering a competitor unable effectively to name what it was endeavoring to sell").

A term is generic if "consumer[s] understand[] the word to refer to the goods themselves" as opposed to "a particular producer's goods or services." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 929 (9th Cir. 2005) (first quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005), and then quoting *Surgicenters*, 601 F.2d at 1016). Courts have sometimes described generic terms as those that identify "the genus of which the particular product or service is a species." *Surgicenters*, 601 F.2d at 1014; *see also Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998) ("Generic marks give the general name of the product; they embrace an entire class of products."). The Ninth

Circuit has "often determined whether a [term] is generic using the 'who-are-you/what-are-you' test: 'A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the generic name of the product answers the question 'What are you?'"" *Yellow Cab Co. of Sacramento*, 419 F.3d at 929 (quoting *Filipino Yellow Pages*, 198 F.3d at 1147). Courts have found terms generic when they identify a broad category into which the listed goods fall, *Abercrombie & Fitch*, 537 F.2d at 12 (holding that the term "Safari" is generic for the articles of clothing that comprise the "Safari suit" outfit); *In re Leatherman Tool Grp., Inc.*, 32 U.S.P.Q.2d (BNA) 1443, 1449 (T.T.A.B. 1994) (holding that the term "Pocket Survival Tool" is generic for any pocket-sized survival implement, such as a knife or pliers), or when they identify a type or subcategory of the listed goods, *Schwan's IP, LLC v. Kraft Pizza Co.*, 460 F.3d 971, 975 (8th Cir. 2006) ("Brick Oven, as used to identify pizza, is a generic term."); *In re Northland Aluminum Prods., Inc.*, 777 F.2d 1556, 1561 (Fed. Cir. 1985) ("BUNDT is a [generic] name for a type of ring cake, and is not registerable as a trademark for 'ring cake mix.'").

To state a claim for genericness requires alleging that the putative mark, standing on its own, is a generic name for the goods or services listed in the registration or application. *See Elliott*, 860 F.3d at 1157; *see also H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989–90 (Fed. Cir. 1986) ("The critical issue in genericness cases is whether members of the relevant public primarily use or understand *the term sought to be protected* to refer to the genus of goods or services in question.") (emphasis added). Thus, as relevant here, any claim of genericness against BBK's registrations must be premised on an allegation that either "skunk" or "skunk brand" are themselves generic words for the various items of smoking paraphernalia listed in the registrations (cigarette rolling papers, cigarette tubes, electronic cigarettes, etc.). But, with one exception, Skunk's counterclaims stopped short of making any such allegations. Instead of claiming that the words "skunk" or "skunk brand" themselves refer to smoking paraphernalia or a subset of smoking paraphernalia, Skunk alleged that the words mean cannabis and only take on this

latter meaning when affixed to the particular item of paraphernalia.² Thus, Skunk failed to allege that the words "skunk" or "skunk brand" themselves are generic names for the products listed in BBK's registrations and, consequently, failed to adequately plead its genericness claims. (Doc. 54 at ¶¶ 255, 256, 257, 260, 261, 262, 271, 286, 290, 300, 304, 311, 315).³

Citing *Royal Crown Co. v. Coca-Cola Co.*, 892 F.3d 1358 (Fed. Cir. 2018), Skunk argues that it adequately stated its counterclaims for cancellation based on genericness because terms may still be found generic if they "refer to a key aspect of the genus (or class) of goods or services, rather than the entire genus." (Doc. 73 at 8-9). Although this may be an accurate statement of law,⁴ *Royal Crown* only emphasizes that the genericness inquiry is limited to consumer understanding of the words used in the putative mark, not those words when affixed to the listed goods. There, several competitors of The Coca-Cola Company ("TCCC") raised genericness challenges to TCCC's attempt to register "various versions of COCA-COLA ZERO and COKE ZERO, SPRITE ZERO, FANTA ZERO, PIBB ZERO, VALUT ZERO, POWERADE ZERO, and FULL THROTTLE ZERO."

---

² Skunk asserts that its counterclaims each present separate factual questions and, thus, "do not necessarily rise and fall together." (Doc. 73 at 10). Except as applied to "herbs for smoking," analyzed below, each of Skunk's counterclaims contending the registrations should be canceled because they are generic suffer from this defect and thus the Court need not address them individually.
³ Skunk's allegations appear somewhat circular. If the genericness of the mark hinges on what product it is affixed to, then it is difficult to imagine a trademark that would not be vulnerable to a challenge of genericness. For example, under Skunk's theory, the word-mark "Ivory" could be found generic, even as a trademark for soap, because it identifies the sub-category of soaps that are white colored. *Contra* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:1 (5th ed. 2019)
⁴ *Royal Crown*'s reasoning has been criticized "because it smears the crucial line between a generic name and a descriptive word." 2 McCarthy, *supra*, § 12:10 & n.13. This is an undesirable outcome because while descriptive terms may be registered upon proof of secondary meaning, generic terms can never be registered regardless of any secondary meaning the producer's efforts have won. *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 297 (3d Cir. 1986). *Royal Crown* does appear consistent with the law of this and other circuits, however, at least insofar as it embodies the general rule that adjectives also receive no protection when "they describe a characteristic of a class of products." *CG Roxane LLC v. Fiji Water Co.*, 569 F. Supp. 2d 1019, 1026 (N.D. Cal. 2008) (collecting cases); *see also Henri's Food Prods. Co. v. Tasty Snacks, Inc.*, 817 F.2d 1303, 1305–06 (7th Cir. 1987) ("[A]n adjective can be a generic term when that word is part of a common descriptive name of a *kind* of goods. In order to be generic, however (as the word implies), the word in question must serve to denominate a type, a kind, a genus or a subcategory of goods.") (footnote omitted).

*Royal Crown*, 892 F.3d at 1362–63. The Trademark Trial and Appeal Board rejected these claims but on appeal the Federal Circuit Court of Appeals reversed, explaining that the Board erred by not considering whether the marks could be general terms for the "sub-group" of zero-calorie beverages even if they were not general terms for the broader category of soft drinks, sports drinks, or energy drinks. *Id.* at 1368. As the court several times made clear, however, the putative marks were amenable to this meaning not because they were affixed to those products but because the marks themselves incorporated beverage names. *Id.* ("[T]he Board may not divorce the public's perception of the term ZERO from its perception of that term as part of a beverage combination mark."). Thus, even under *Royal Crown*, the genericness inquiry depends on what the words in the mark mean standing alone, not what those words mean when affixed to a certain product.

*In re Cordua Restaurants, Inc.*, 823 F.3d 594 (Fed. Cir. 2016), on which *Royal Crown* relied, provides even further illustration. There, the appellant applied to register the word "churrascos," a barbecue meat dish, as a mark for "[b]ar and restaurant services; Catering." *In re Cordua*, 823 F.3d at 601 & n.3. The Federal Circuit Court of Appeals concluded that "churrascos" was generic for those services because it referred to an aspect of the broad genus of restaurant services. *Id.* at 604. But the court held this way not because the word "churrascos," when used in conjunction with "bar and restaurant services" would lead a consumer to understand that such services included churrascos; rather, it was because the word "churrascos" itself referred to a type of restaurant and the public used the word to refer to that type of restaurant. *Id.*

Judge Friendly's opinion in *Abercrombie & Fitch Co. v. Hunting World Inc.*, 537 F.2d 4 (2d Cir. 1976), also illustrates the proper analysis. In that case, the Second Circuit Court of Appeals concluded that the term "Safari" was generic as applied to certain khaki-colored garments—"a broad flat-brimmed hat with a single, large band . . . , a belted bush jacket with patch pockets and a buttoned shoulder loop" which, when worn together with pants, "is called the 'Safari suit.'" *Abercrombie & Fitch*, 537 F.2d at 11–12. But the court did not reach this conclusion because consumers would understand the term "Safari," when

used in conjunction with these garments, to refer to a subset of garments intended for use on hunting trips in the African savannah. *Id.* Instead, it was because the word "Safari" itself was a generic term for a well-known outfit in contemporary American fashion apparel and thus did no more than inform consumers what the components of that outfit were—a safari hat or a safari jacket. *Id.*

As indicated above, Skunk's genericness allegations are each deficient in this respect, save one. Skunk alleged that "skunk" is a generic term for cannabis and, thus, that the term "skunk" identifies a subcategory of herbs for smoking—cannabis. (Doc. 54 at 53-54, ¶¶ 273, 277). *See generally Oxford English Dictionary* (3d ed. 2019) (defining "cannabis" as "[a] herbaceous flowering plant, *Cannabis sativa* . . . widely cultivated for . . . use as a recreational drug"). Because these allegations are based on the meaning of the word "skunk" itself, they properly state a claim for cancellation based on genericness.

Accordingly, the Court will partially dismiss Skunk's counterclaims for cancellation based on genericness.

**D. Skunk's Counterclaims for Cancellation Based on Descriptiveness**

Skunk's counterclaims for cancellation of Reg. Nos. '712, '902, and '903 for mere descriptiveness alleged that because the term "skunk," when used in connection with smoking paraphernalia, is merely descriptive because it "describes a quality, characteristic, function, feature, purpose, or use of the specified goods . . . the ability to use the product with cannabis" and has no secondary meaning. (*E.g.*, Doc. 54 at 56-57 ¶ 291). BBK does not dispute that a registration for a merely descriptive mark that lacks secondary meaning is subject to cancellation; instead, it argues these counterclaims should be dismissed because: (1) Reg. No. '903 is incontestable as to "cigarette rolling papers" because it is an iteration of Reg. No. '666, which is incontestable under 15 U.S.C. § 1115(b), and (2) Skunk inadequately pleaded its counterclaims for cancellation based on descriptiveness. (Doc. 64 at 11-15).

**i. Incontestability**

Relying on the statement in *Marketquest Group, Inc. v. BIC Corp.*, 316 F. Supp. 3d

1234, 1265 (S.D. Cal. 2018), that "[c]ourts have extended protection against descriptiveness challenges to a mark in an incontestable registration to a contestable registration if the marks are iterations of the same mark and for the same goods or services," BBK asserts that Reg. No. '903 cannot be challenged because Reg. No. '666 is incontestable. Even if the principle mentioned in *Marketquest* could afford Reg. No. '903 protection, however, it cannot apply to bar Skunk's counterclaim for cancellation based on descriptiveness at this stage because even an incontestable mark may be cancelled "at any time . . . if it was obtained fraudulently." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 195 (1985). Because this doctrine will not protect Reg. No. '903 if Reg. No. '666 is cancelled, and because Skunk's counterclaim for cancellation of Reg. No. '666 based on fraudulent procurement survives this motion, the Court will not dismiss Skunk's counterclaim for cancellation of Reg. No. '903 based on descriptiveness on this ground.

### ii. Sufficiency of Facts

BBK next argues that Skunk failed to state plausible counterclaims for cancellation based on descriptiveness because the connection Skunk draws between the marks and the goods necessarily requires the exercise of imagination, rendering them "at least, suggestive marks." (Doc. 64 at 13-14). Skunk responds and argues that it sufficiently stated its counterclaim that the registrations should be canceled for being merely descriptive based on its allegations that the word "skunk" simply identifies a purpose for the registered products and lacks secondary meaning. (Doc. 73 at 12-14). Again, it is common ground that a registration for a merely descriptive mark that lacks secondary meaning is subject to cancellation.

"Descriptive marks 'define a particular characteristic of the product in a way that does not require any exercise of the imagination.'" *Quicksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 760 (9th Cir. 2006) (quoting *Yellow Cab Co. of Sacramento*, 419 F.3d at 927); *see also Zobmondo*, 602 F.3d at 1116 (explaining that for a mark to be merely descriptive it need only "describe some aspect of the product"). Like generic terms, descriptive marks are not inherently distinctive, and so they "do not initially satisfy the distinctiveness

- 13 -

element" required for trademark protection. *Kendall-Jackson Winery*, 150 F.3d at 1047. A descriptive mark can receive trademark protection, however, if it has "acquire[d] distinctiveness [because] the public comes to associate the mark with a specific source." *Id.* "This acquired distinctiveness is generally called 'secondary meaning.'" *Two Pesos*, 505 U.S. at 769.

Close to descriptive marks in terms of distinctiveness, "suggestive marks" are those "for which 'a consumer must use imagination or any type of multistage reasoning to understand the mark's significance,'" *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 (9th Cir. 2002) (quoting *Kendall-Jackson Winery*, 150 F.3d at 1047 n.8), and are thus "automatically entitled to federal trademark protection," *Zobmondo*, 602 F.3d at 1113. "Whether a mark suggests or describes the goods or services of the trademark holder depends, of course, upon what those goods or services are." *Entrepreneur Media*, 279 F.3d at 1142.

The Court finds that Skunk sufficiently alleged its counterclaims for cancellation based on descriptiveness because it has alleged that (1) "skunk" is a generic/slang term for cannabis; (2) the goods listed in Reg. Nos. '712, '902, and '903 are employed frequently by cannabis users; and (3) when such goods are labeled with the term "skunk," the relevant public would understand that the goods' purpose is use with cannabis. (Doc. 54 at 55-56, 59-60, 61-62 ¶¶ 285-89, 291, 299-303, 305, 310-14, 316). Assuming the truth of these allegations, they sufficiently state counterclaims for cancellation based on descriptiveness because the purchasing public could plausibly perceive "skunk" to describe the purpose or utility of BBK's smoking paraphernalia—use with "skunk" (cannabis). *See, e.g.*, *Entrepreneur Media*, 279 F.3d at 1142 ("The word 'entrepreneur' describes both the subject matter and intended audience of the magazine . . . ; an entirely unimaginative, literal-minded person would understand the significance of the reference."); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1040 (2d Cir. 1992) ("[A] term can be descriptive in two ways. It can literally describe the product, or it can describe the purpose or utility of the product." (quoting *20th Century Wear v. Sanmark-Stardust*, 747 F.2d 81,

88 (2d Cir. 1984)) (alteration in original); 2 McCarthy, *supra*, § 11:16. BBK's argument to the contrary—that consumers must necessarily use imagination to understand the mark— is ultimately a request for this Court not to presume the truth of the facts alleged in Skunk's counterclaims, as the Court must at the motion to dismiss stage. Because the factual allegation that the word "skunk" identifies a purpose for BBK's various products—use with "skunk"—supports plausible counterclaims for cancellation based on descriptiveness the Court will not dismiss Skunk's counterclaims on that basis.

BBK asserts further that Skunk's counterclaims for cancellation based on descriptiveness are implausible given that "the PTO issued no less than five separate registrations for Plaintiff's . . . [m]arks, establishing presumptive inherent distinctiveness five times over." (Doc. 64 at 15). It is true that when the PTO issues a registration without requiring proof of secondary meaning, the mark enjoys a presumption of inherent distinctiveness. *Quicksilver*, 466 F.3d at 760. This presumption, however, is a rebuttable one. *Zobmondo*, 602 F.3d at 1113–14. Thus, the presumption cannot operate on its own to defeat Skunk's counterclaims at the motion to dismiss stage. Indeed, if proven true, Skunk's allegations may overcome the presumption of inherent distinctiveness. *Cf. Quicksilver*, 466 F.3d at 760 ("To overcome the presumption . . . Kymsta must present evidence that 'the primary significance of the mark to the purchasing public is that of [primarily only] a [name].'" (quoting *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999)) (alteration in original).

BBK lastly contends that Skunk's counterclaims for cancellation based on descriptiveness fail for lack of sufficient facts showing the absence of secondary meaning. (Doc. 64 at 15). But secondary meaning is generally a factual question, depending on a variety of factors. *See Yellow Cab. Co. of Sacramento*, 419 F.3d at 930. Other district courts have held that the allegation that the marks "have not attained secondary meaning" suffices to survive a motion to dismiss given the impracticalities of pleading a negative with particularity. *See, e.g.*, *Brookfield Office Props. Inc. v. Manhattan W. Hotel*, 16 Civ. 1854 (VM) (JCF), 2016 WL 6906713, at *4 (S.D.N.Y. Nov. 18, 2016); *Project Consulting*

*Servs., Inc. v. NVI, LLC*, CV 15-1652, 2016 WL 1393501, at *3 (E.D. La. Apr. 8, 2016); *Milacron LLC v. Stough Tool Sales*, No. 1:12-CV-119, 2012 WL 2366639, at *2 (S.D. Ohio June 21, 2012). Therefore, the Court also will not to dismiss Skunk's counterclaims for cancellation based on descriptiveness on this basis.

### E. Skunk's Counterclaim for Cancellation Based on Abandonment

In its response, Skunk conceded that it seeks only partial cancellation of the Reg. No. '666 registration based on abandonment. (Doc. 73 at 17). BBK's motion argued for dismissal of this counterclaim only to the extent Skunk sought full cancellation for abandonment of only some of the goods listed in the registration, (Doc. 64 at 16-17), and now BBK asks this Court to make Skunk amend its counterclaim to clarify the relief sought, (Doc. 85 at 2 n.1). Accordingly, the Court will deny the motion to dismiss the counterclaims based on abandonment but order Skunk to amend this counterclaim for purposes of clarification.

### F. Leave to Amend

Although Skunk has not asked for leave to amend its counterclaims for cancellation based on genericness, "a district court should grant leave to amend even if no request was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

To reiterate, as to BBK's smoking paraphernalia products, the Court dismissed Skunk's counterclaims based on genericness because it did not allege that the word "skunk" itself identifies smoking paraphernalia. Thus, whether Skunk can cure this defect depends on whether it could plausibly allege that the relevant consumer would understand the word "skunk" itself to be a general term for smoking paraphernalia or a subcategory thereof. Because it is possible that Skunk could maintain such an allegation, the Court will grant Skunk leave to amend these counterclaims.

/ / /

/ / /

## III. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Plaintiff BBK Tobacco & Foods, LLP's Motion to Dismiss Defendant Skunk, Inc.'s Counterclaims for Cancellation Based on Fraudulent Procurement, Genericness, and Abandonment (Doc. 64) is **GRANTED IN PART AND DENIED IN PART** as explained in the above.

**IT IS FURTHER ORDERED** that Skunk: (1) must file an amended answer and counterclaim to clarify its abandonment counterclaims and (2) may, within this same amendment, replead its genericness counterclaims if it so chooses. To permit Skunk to comply with this order, the deadline to amend the answer (Doc. 63 at 2) is extended to fourteen days from the date of this order.

**IT IS FURTHER ORDERED** denying as moot BBK's Motion to Strike Skunk's Affirmative Defenses in the Answer and Counterclaim (Doc. 66) because Skunk will file an amended answer and counterclaim consistent with this order.[5]

Dated this 15th day of November, 2019.

James A. Teilborg
Senior United States District Judge

---

[5] BBK's Motion to Strike Vatra's Affirmative Defenses, (Doc. 67), will be addressed in a separate order.

- 17 -