**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BBK Tobacco & Foods LLP,<br><br>Plaintiff,<br><br>v.<br><br>Skunk Incorporated, et al.,<br><br>Defendants. | No. CV-18-02332-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff BBK Tobacco & Foods LLP's ("BBK") Motion for Judgment on the Pleadings. (Doc. 65). Defendant Skunk, Inc. ("Skunk") has responded, (Doc. 74), and BBK has replied, (Doc. 86). The Court now rules on the motion.[1]

## I. BACKGROUND

Skunk currently owns a registration in the United States Patent and Trademark Office ("PTO") for the mark "Skunk" ("Skunk Registration") filed on March 24, 2016. (Doc. 45 at 7 ¶ 48). The Skunk Registration covers the following products:

> Backpacks; book bags, sports bags, bum bags, wallets and handbags; Beach bags; Belt bags; Book bags; Diaper bags; Drawstring bags; Dry bags; Duffle

---

[1] The Court notes that BBK has technically failed to comply with Local Rule 12.1, which instructs that a motion for judgment on the pleadings should be filed only after "the movant notified the opposing party of the issues asserted in the motion and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party." LRCiv 12.1. (Docs 74 at 2; 86 at 2). In the exercise of its discretion, the Court will not summarily strike BBK's motion for its noncompliance. The Court cautions, however, that all future motions must comply with the Local Rules. Indeed, as will be seen, this case shows just how critical compliance with Local Rule 12.1 is, because the parties have seemingly reached an agreement regarding BBK's non-use claims. Thus, that issue could have been resolved without Court involvement and expenditure of client resources.

bags; Evening bags; Flight bags; Hiking bags; Hip bags; Hobo bags; Hunting bags; Kit bags; Messenger bags; Sling bags; Suit bags; Tote bags; Traveling bags; Wristlet bags. (Doc. 74 at 3).

In 2017, Skunk applied for a new registration with the PTO, using the word "skunk" in connection with "several dozen types of bags" ("Skunk Application"). (*Id.* at 4). Later, BBK filed a notice of opposition to the Skunk Application and a petition for cancellation of the Skunk Registration with the Trademark Trial and Appeal Board ("TTAB"). (Doc. 65 at 3). BBK also filed a complaint in this Court, requesting, inter alia, the same relief. (*Id.*). Skunk has since filed its answer to BBK's complaint, (Doc. 54), and, based on purported admissions in that answer, BBK now claims it is entitled to judgment on the pleadings for its cancellation and refusal claims, (Doc. 65 at 2).

## II. DISCUSSION

### a. Legal Standard

By rule, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court should grant judgment on the pleadings only when the movant "clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997) (quoting *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996)) (internal quotations omitted). Given the "policy in favor of ensuring to each litigant a full and fair hearing on the merits of his claim or defense," however, courts "generally hesitate to grant judgment on the pleadings." *Haller v. Advanced Indus. Comp. Inc.*, 13 F. Supp. 3d 1027, 1029 (D. Ariz. 2014) (quoting *Carrasco v. Fiore Enters.*, 985 F. Supp. 931, 934 (D. Ariz. 1997)).

In deciding a motion for judgment on the pleadings, the Court "cannot consider evidence outside the pleadings unless the Court treats the motion as a motion for summary judgment," but it can "take 'judicial notice of undisputed matters of public record, including documents on file in state or federal courts,' without converting the motion." *Id.* (citation omitted). The Court must also accept as true all the well-pleaded allegations in

the pleadings, *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998), and construe them in the light most favorable to the non-movant, *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989), unless they "contradict facts that may be judicially noticed by the [C]ourt," *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

### b. Jurisdiction over the Skunk Application

As an initial matter, the Court must first reject Skunk's contention that this Court has no authority to order refusal of the Skunk Application. (Doc. 74 at 4-5). When a court has jurisdiction over a registered mark, as is true with the Skunk Registration, it may also determine the "registerability" of a closely related mark. 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:113.50 (5th ed. 2019); *see also Forever 21, Inc. v. Gucci Am., Inc.*, No. CV 17-04706 SJO (Ex), 2018 WL 5860684, at *3 (C.D. Cal. Feb. 9, 2018) (applying this principle). Because there is substantial overlap between the bags listed in the Skunk Application and the bags listed in the Skunk Registration, the Court can exercise jurisdiction over the Skunk Application.

### c. BBK's Claims for Full Cancellation of the Skunk Registration and Full Refusal of the Skunk Application Based on Fraud

BBK argues that because Skunk admits that it made false representations to the PTO for the purpose of obtaining a mark, both in the Skunk Application and when it obtained the Skunk Registration, Skunk's admissions "establish[] all of the elements of Plaintiff's claims for cancellation" based on fraud. (Doc. 65 at 9). Skunk asserts in response that the pleadings do not establish all the elements of fraudulent procurement. (Doc. 74 at 9, 15). Expressing no decision on other elements of BBK's fraud claims, because the pleadings do not clearly establish that Skunk acted with the requisite fraudulent intent in connection with either the Skunk Application or the Skunk Registration, the Court will deny judgment on the pleadings for BBK's claims for full cancellation and refusal based on fraud, as discussed more fully below.

A claim for cancellation based on fraud requires the claimant to show "(1) a false

representation [to the PTO] regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013) (citing *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990)).

A registration should be canceled, however, only when the applicant made the misrepresentation with "a willful intent to deceive" the PTO. *In re Bose Corp.*, 580 F.3d 1240, 1246 (Fed. Cir. 2009); *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 996 (9th Cir. 2001) (explaining that a party would be found to have committed fraud "only . . . if he acted with scienter" but not if he "had a good faith belief"). Thus, a representation to the "PTO may be 'false,' without being 'fraudulent.' Statements of honest, but perhaps incorrect belief or innocently made inaccurate statements of fact do not constitute 'fraud.' Fraud requires proof of a knowingly false statement . . . made with an intent to deceive the PTO." 6 McCarthy, *supra*, § 31:66 (footnote omitted); *see also In re Bose Corp.*, 580 F.3d at 1243 (distinguishing merely false statements, which "may be occasioned by a misunderstanding, an inadvertence, a mere negligent omission, or the like," from fraudulent statements "involving an intent to deceive" (quoting *Kemin Indus., Inc. v. Watkins Prods., Inc.*, 192 U.S.P.Q. (BNA) 327, 329 (T.T.A.B. 1976)). Recognizing that direct evidence of the necessary subjective intent to deceive is often unavailable, courts allow that "such intent can be inferred from indirect and circumstantial evidence," so long as that evidence is still clear and convincing. *In re Bose Corp.*, 580 F.3d at 1245 (quoting *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)).

BBK asks the Court to "infer an intent to deceive, even if [Skunk] does not admit to having an intent to deceive." (Doc. 65 at 11-17). Its request is not well-taken. To the extent that the Court can draw inferences in deciding a motion for judgment on the pleadings, it must draw them in Skunk's favor. *See NLRB v. Weirton Steel Co.*, 146 F.2d 144, 145 (3d Cir. 1944) ("However justified the conclusion, which the petitioner urges . . . it will rest

upon inference alone. But, a court is without right to draw inferences favorable to a movant for summary judgment on the pleadings. In that situation, all reasonable intendments and inferences . . . are, as a matter of law, to be taken against the movant and in favor of the opponent.").

None of BBK's cited authority supports its contention that this Court can infer fraudulent intent from the fact that Skunk now acknowledges it had not used many of the goods listed in the Skunk Registration and the Skunk Application. In those authorities such an inference was drawn, if at all, only after a trial, *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 258 (2d Cir. 2011) (jury trial); *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 293 F. Supp. 3d 1334, 1337 (M.D. Fla. 2017) (bench trial); *Tokidoki, LLC v. Fortune Dynamic, Inc.*, No. CV 07-1923 DSF (PJWx), 2009 WL 2366439, at *1 (C.D. Cal. July 28, 2009) (same), or at the very least on a substantial evidentiary record, *Martal Cosmetics, Ltd. v. Int'l Beauty Exch. Inc.*, No. 01-cv-7595 (TLJ)(JO), 2010 WL 2179022, at *2–3 (E.D.N.Y. May 28, 2010) (explaining that "a reasonable finder of fact could" find fraudulent intent and thus "[t]he existence of 'clear and convincing evidence' of fraud . . . [was] a question of fact to be determined at trial"); *Nationstar Mortg. LLC v. Ahmad*, 112 U.S.P.Q.2d (BNA) 1361, 1363 (T.T.A.B. 2014) (rendering decision after taking testimony and receiving evidence); *First Int'l Servs. Corp. v. Chuckles, Inc.*, 5 U.S.P.Q.2d (BNA) 1628, 1630–31 (T.T.A.B. 1987) (explaining the extensive evidence upon which decision was made).

*Melodrama Publishing, LLC v. Santiago* is the lone exception BBK cites, but it is nonetheless distinguishable. That case involved a trademark dispute between an author, who claimed to hold a registration for the name "Nisa Santiago," and her former publisher, who maintained that the author's registration was fraudulent because it alone had used the name in commerce. *Melodrama Publ'g, LLC v. Santiago*, No. 12 Civ. 7830 (JSR), 2013 WL 1700929, at *1 (S.D.N.Y. April 11, 2013). Because the author had "fraudulently submitted images of the covers of three of Melodrama's books to the PTO as supposed examples of her own use of the mark, without ever mentioning that she had not written the

books, and, indeed, had no connection with them beyond her then-terminated publishing contracts," the court ruled that the publisher was entitled to judgment on the pleadings for its fraud claim. *Id.* at *6. In other words, unlike this case, *Melodrama Publishing* presented the rare case where direct evidence of a deliberate intent to deceive was apparent on the face of the pleadings. Therefore, the Court must continue to adhere to the general rule that any reasonable inferences from the pleadings must be drawn in the non-movant's favor.

Turning to the allegations in the pleadings, the Court finds that they do not clearly establish that Skunk acted with fraudulent intent when it made false representations to the PTO both when it submitted the Skunk Application and when it obtained the Skunk Registration. Indeed, Skunk specifically denies acting with any intent to deceive the PTO. (Doc. 54 at 25-26, 30 ¶¶ 121, 127, 129, 130, 132, 164-66, 168). Skunk has also filed a motion to amend the Skunk Application with TTAB,[2] in which it explains that its misrepresentations in the Skunk Application were predicated on its misunderstanding of the requirements of registering a trademark under Section 1(a).[3] (Doc. 65-1, Ex. A, at 2-3). Construed in the light most favorable to Skunk, these allegations indicate nothing more than that Skunk was earnestly mistaken about its legal obligations when it filed the Skunk Application in 2017. If Skunk was operating under such confusion in 2017, it is reasonable to infer that its similar error in the Skunk Registration, in 2016, stemmed from that same misunderstanding. Taking as true the allegations in the pleadings, Skunk's earnest but mistaken belief would fall short of the kind of fraudulent intent necessary to support a claim to cancel a registration for fraud. *See Hokto Kinoko*, 738 F.3d at 1097–98 (explaining that evidence did not suggest "anything other than . . . a simple mistake" where a party misunderstood the requirements of American trademark law, its attorney did not usually make inquires confirming companies' bona fide intent to use the marks on the products listed in its application, and filed a request to amend upon realizing its error); *In re Bose*

---

[2] BBK submitted this filing in its motion for judgment on the pleadings and Skunk relies on it in its response. The Court finds that it can take judicial notice of the motion to amend pending before TTAB. *See Carver Int'l, Inc. v. SurfSkate Indus., LLC*, No. SACV 15-1348 AG (DFMx), 2016 WL 10576627, at *1 (C.D. Cal. May 25, 2016) (taking judicial notice of documents filed in a TTAB proceeding).
[3] *See generally* 15 U.S.C. § 1051(a).

*Corp.*, 580 F.3d at 1246 (concluding that an applicant who was mistaken about the requirement that goods be "use[d] in commerce" was not liable for fraud even if his belief was not reasonable). Accordingly, the Court will deny BBK's motion for judgment on the pleadings for its claims for full cancellation and refusal based on fraud.

### d. BBK's Claims for Partial Cancellation of the Skunk Registration and Partial Refusal of the Skunk Application Based on Non-use

BBK also argues that Skunk's admission that it never used some of the goods listed in the Skunk Registration and Skunk Application means that the Court must grant its claims for partial cancellation of the Skunk Registration and partial refusal of the Skunk Application. (Doc. 65 at 5). For the most part, Skunk concedes this point. Indeed, as noted, Skunk has even filed a motion with TTAB to "amend its filing basis to an intent-to-use basis pursuant to Section 1(b)" for many of the goods listed in the Skunk Application and to delete many others. (Doc. 65-1, Ex. A, at 4 ¶¶ 7 (amended filing basis), 11 (deletion)).

A trademark applicant "can move to amend its application to substitute Section 1(b)[, which allows application for bona fide intention to use a trademark,] as its filing basis and maintain its original filing date, provided that it meets all the requirements for a Section 1(b) filing basis." *Sinclair Oil Corp. v. Kendrick*, 85 U.S.P.Q.2d (BNA) 1032, 1033 (T.T.A.B. 2007).[4] Should TTAB grant Skunk's pending motion, it will moot any claim for partial refusal of the pending application based on non-use. *See Sinclair Oil*, 85 U.S.P.Q.2d (BNA) at 1033. Because TTAB has yet to resolve this issue, the Court finds that it is inappropriate to enter judgment on the pleadings and order partial refusal of the Skunk Application at this time.

As to the Skunk Registration, the parties appear to have reached an agreement that the following goods should be removed for non-use: Beach bags; bum bags; diaper bags; hip bags; messenger bags; sling bags; suit bags; tote bags; wristlet bags . . . backpacks; bookbags; sports bags; handbags; duffle bags; flight bags; and hiking bags. (Docs. 74 at 14; 86 at 10). Therefore, because both parties agree that these goods should be removed

---

[4] *See generally* 15 U.S.C. § 1051(b).

from the Skunk Registration for non-use, the Court shall grant BBK's motion as to these goods only.

### III. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Plaintiff BBK Tobacco & Foods, LLP's Motion for Judgment on the Pleadings on Plaintiff's Claims for Cancellation and Refusal Based on Nonuse and Fraud (Doc. 65) is **GRANTED IN PART AND DENIED IN PART** as explained in the above.

**IT IS FURTHER ORDERED** that, because the parties agree that certain goods should be removed from the Skunk Registration for non-use, fourteen days from the date of this order the parties shall file a joint proposed form of order in compliance with 15 U.S.C. § 1119 to notify the Director of the Patent and Trademark Office to make an appropriate entry upon the records of the Patent and Trademark Office.

Dated this 15th day of November, 2019.

James A. Teilborg
Senior United States District Judge