**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BBK Tobacco & Foods LLP, | No. CV-18-02332-PHX-JAT |
| Plaintiff/counterdefendant, | **ORDER** |
| v. | |
| Skunk Incorporated, et al., | |
| Defendants/counterclaimants. | |

Pending before the Court is Plaintiff BBK Tobacco & Foods LLP's ("Plaintiff") Motion for Alternative Service. (Doc. 150). Defendants Skunk Inc. and Vatra Inc. ("Defendants") have responded, (Doc. 154), and Plaintiff has replied, (Doc. 155). The Court now rules on the motion.

Plaintiff seeks the Court's authorization to serve a subpoena duces tecum and a subpoena for deposition testimony on nonparty Masood R. Khan, Skunk Inc.'s former attorney, via both e-mail and certified mail. (Doc. 150 at 2). An alternative mode of service is necessary, in Plaintiff's view, because personally serving Khan has "prove[n] impractical." (*Id.*). All told, Plaintiff has e-mailed Khan seven times to obtain his cooperation for the planned deposition and attempted to personally serve him at his law offices with the relevant subpoenas six times. (Doc. 155 at 2). These efforts were not successful. (*Id.*). Soon after these attempts, Skunk Inc. began objecting to discovery requests that it viewed as seeking privileged communications between Khan and itself. Plaintiff sought this Court's intervention on December 11, 2019, (Doc. 134), and in January

1    this Court ruled that Skunk Inc. had impliedly waived the attorney-client privilege to a
2    limited extent, (Doc. 149). This motion for alternative service followed shortly thereafter.

3    Defendants oppose Plaintiff's request, arguing first that Federal Rule of Civil Procedure ("Rule") 45(b)(1) requires personal service of subpoenas. (Doc. 154 at 2–4). This interpretation of Rule 45, resting on a literal construction "of the word 'delivering' in subdivision (b)(1) of the [R]ule with reference to the person to be served," is certainly both widespread and longstanding. 9A Arthur R. Miller, *Federal Practice and Procedure* § 2454 (3d ed. Aug. 2019 update).[1] Nonetheless, "[i]n recent years a growing number of cases have departed from the view that personal service is required and alternatively have found service of a subpoena under Rule 45 proper absent personal service." *Id.* Those courts cite both textual and policy reasons to support their decisions not to require personal service, both of which are persuasive.

First, the notion that Rule 45 requires personal service of all subpoenas does not find textual support in the Rule. Nothing about Rule 45(b)(1)'s use of the phrase "delivering a copy to the named person" mandates personal service. *Wells Fargo Bank NA v. Wyo Tech Inv. Grp. LLC*, No. CV-17-04140-PHX-DWL, 2019 WL 3208114, at *2 (D. Ariz. July 16, 2019) (first citing *Doe v. Hersemann*, 155 F.R.D. 630, 630 (N.D. Ind. 1994); and then citing *OceanFirst Bank v. Hartford Fire Ins.*, 794 F. Supp. 2d 752, 754 (E.D. Mich. 2011)). Delivery, after all, can be accomplished by placing an item, or even only its substance, within the constructive possession of another, *see Delivery*, *Black's Law Dictionary* (4th ed. 1951), and personal service is not needed to accomplish that task. Although personal service might, as a purely practical matter, have been the only way to accomplish "delivery" in an earlier era, modern technology can often perform that task just as well in today's day and age. Reading the word "delivering" to require personal service would also render ineffective language in Rule 4. *Ott v. City of Milwaukee*, 682 F.3d 552,

---

[1] The Ninth Circuit Court of Appeals has not opined on this issue in a published decision but it has expressed a preference for personal service in dicta in an unpublished decision. *Chima v. U.S. Dep't of Def.*, 23 F. App'x 721, 724 (9th Cir. 2001) (agreeing that subpoenas served through mail were "probably served . . . improperly" but concluding that, if any error occurred, it was nonprejudicial).

557 (7th Cir. 2012) (approving of use of certified mail to deliver subpoenas). Rule 4(e)(2) provides that one permissible method to serve an individual with a summons is by "delivering a copy of the summons and of the complaint to the individual personally." But if "delivering" means only personal service already, "the use of the word 'personally' in that part of Rule 4 would be 'pure surplusage.'" *Ott*, 682 F.3d at 557.

Second, interpreting Rule 45 as forbidding alternative means of service would violate the policy enshrined in Rule 1 that "[t]hese rules . . . should be construed, administered, and employed by the court to secure the just, speedy, and inexpensive determination of every action." Given that Rule 45 does not unambiguously require personal service, there is "no reason to inflate the costs of litigation by ruling out . . . sensible option[s] for serving a subpoena (along with the necessary fees) and requiring parties to hire a second person for service." *See Ott*, 682 F.3d at 557; *Wells Fargo Bank NA*, 2019 WL 3208114, at *3; *Toni Brattin & Co., Inc. v. Mosaic Int'l, LLC*, Case No. 15-mc-80090-MEJ, 2015 WL 1844056, at *4 (N.D. Cal. Apr. 9, 2015). That concern is particularly acute in cases like this, where Plaintiff has attempted personal service unsuccessfully several times at the addresses listed on Khan's website for his law offices. Considering Rule 1's policy, Rule 45(b) should not be read to require personal service when the text does not clearly foreclose other means that may not only be less expensive but more effective.

The Court also finds persuasive *Toni Brattin & Co.*'s observation that most of the decisions requiring personal service address "whether to compel a witness to comply with a subpoena served by means other than personal service," a slightly different issue than when a party seeks a court's permission to use alternative service in advance. 2015 WL 1844056, at *3. Thus, it is far from unusual for a court to authorize alternative service of a subpoena upon a party's request after that party has attempted personal service without any success. *Id.* (collecting cases).

Defendants' remaining arguments do not otherwise demonstrate that Plaintiff's request is inappropriate. They suggest Plaintiff waited too long to file the pending motion.

(Doc. 154 at 2). As previously noted, however, any information that Khan might possess was the subject of a discovery dispute that this Court resolved just six days before Plaintiff filed this motion. Defendants also argue that those courts which have allowed something less than personal service have done so only after finding "truly diligent efforts at personal service or in the face of extraordinary circumstances." (*Id.* at 3). But this diligence requirement "is apparently derived from the state-law service rules that are sometimes applicable under Rule 4(e)(1)" and it is not at all clear that Rule 45 requires it too. *Wells Fargo Bank NA*, 2019 WL 3208114, at *3 n.3. Given the absence of any text in Rule 45 requiring the standard that Defendants seek to impose and given further that such a standard would undoubtedly conflict with the policy codified in Rule 1 if other means can provide adequate notice, the Court declines here to adopt the heightened standard that Defendants propose.[2] Finally, Defendants argue that the motion is "problematic" because Plaintiff fails to indicate the how or when it will proffer the fees required by Rule 45. (*Id.* at 4). This argument provides no reason to deny a form of alternative service; Plaintiff states it will mail the required check when it mails the copies of the subpoenas. (Doc. 155 at 6).

Any proposed method of service must be reasonably calculated under all the circumstances to ensure that Khan receives notice of the subpoena and that Khan, or attorneys representing him, have the opportunity to file an objection or motion to quash. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Plaintiff seeks

---

[2] Nor does the Court believe that the cases cited support such a high bar. *Dhillon v. Does 1–10*, No. C 13-1465 SI, 2013 WL 5367783, at *1 (N.D. Cal. Sept. 25, 2013), involved a party's efforts to serve two third-parties and does not once mention diligence. Nor did *Cordius Trust v. Kummerfeld*, No. 99 CIV. 3200(DLC), 2000 WL 10268, at *1–2 (S.D.N.Y. Jan. 3, 2000). The cases that did apply a diligence requirement, applied a far more lenient standard than that which Defendants seek to impose. In *Cartier v. Geneve Collections, Inc.*, No. CV 2007-0201(DLI)(MDG), 2008 WL 552855, at *1 (E.D.N.Y. Feb. 27, 2008), the court found that the plaintiff had not presented any facts or evidence to show that it had even attempted personal service and or that the defaulting defendant would likely receive the subpoenas. In *OceanFirst Bank*, 794 F. Supp. 2d at 755, the court found that the plaintiff failed to demonstrate diligence where there was no indication that either the prospective witness resided at the address the process server went to nor that the vehicle he observed there was connected to that prospective witness. And in *Chambers v. Whirlpool Corp.*, No. SA CV 11-1733 FMO (JCGx), 2016 WL 9451361, at *3 (C.D. Cal. Aug. 12, 2016), the court found diligence where the plaintiff attempted personal service at least three times and e-mailed the parties to be served to ensure they were aware of the subpoena. Given these cases, the Court is confident that the facts of this case would support a finding of diligence under the much lower standard that courts actually apply.

to serve Khan by e-mailing him copies of the subpoenas and sending copies via certified mail to both of his law offices. (Doc. 150 at 2). Although Khan has evidently not returned any e-mails from Plaintiff's counsel, the proposed form of alternative service appears at least reasonably likely to provide Khan with sufficient notice because he has seemingly been in contact with at least one of the Defendants, (Doc. 154 at 2 n.1); and, as an attorney operating two law offices, he is likely to receive the copies at one of them. On these limited facts, the proposed alternative appears adequate. However, this determination is without prejudice to a later objection or motion to quash *made by Khan or attorneys representing him*.³

For the foregoing reasons,

IT IS ORDERED that Plaintiff's Motion for Alternative Service, (Doc. 150), is GRANTED.

IT IS FURTHER ORDERED that Plaintiff may serve Khan in the following manner: (a) e-mailing the subpoena duces tecum, subpoena for deposition testimony, and a copy of this order to Khan's work e-mail; and, (b) mailing, via certified mail, the same to the two office addresses listed on the website for Khan's law firm.

Dated this 10th day of February, 2020.

James A. Teilborg
Senior United States District Judge

---

³ Defendants' attorneys go out of their way to inform the Court that they do not represent Khan and have not communicated with him. (Doc. 154 at 2 n.1). Thus, it is unclear how Defendants even have standing to challenge the manner in which Plaintiff plans on serving Khan, particularly in light of the Court's prior ruling on attorney-client privilege. *Cf. Doutherd v. Montesdeoca*, No. 2:17-cv-2225-MCE-EFB, 2018 WL 3008867, at *2 (E.D. Cal. June 15, 2018) ("As a general rule a party to a lawsuit has no standing to object to a subpoena served on a non-party absent a privilege or privacy interest in the requested documents." (citing *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 643 (E.D. Cal. 2014)). Because Plaintiff does not argue that Defendants' counsel cannot defend Khan from a subpoena, and the Court's analysis does not depend on resolving that issue, nothing in this order should be read to approve of efforts by Defense counsel to do so. Plaintiff may, if it so chooses, make subsequent challenges should parties other than Khan, or his attorneys, attempt to rely on Khan's rights to challenge the subpoena or defend the deposition.