**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BBK Tobacco & Foods LLP, | No. CV-18-02332-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Skunk Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendants Skunk Incorporated and Vatra Incorporated's ("Defendants") Motion to Quash Third-Party Subpoenas. (Doc. 213). Plaintiff BBK Tobacco & Foods LLP ("Plaintiff") has responded, (Doc. 217), and Defendants have replied, (Doc. 221). The Court now rules on the motion.[1]

**I.    BACKGROUND**

In this, the latest chapter in the ongoing litany of discovery disputes in this case, the parties are feuding over the propriety of a third-party subpoena. Plaintiff served the subpoena on Special Domain Services, LLC ("SDS") a subsidiary of GoDaddy.com, LLC ("GoDaddy")—an internet domain registrar and website hosting company. (*See* Doc. 213 at 2).[2] The subpoena requested the following information:

---

[1] After the close of briefing, Plaintiff's counsel e-mailed chambers to make supplemental arguments. The court did not consider inappropriate supplemental arguments e-mailed to chambers, and this kind of gross misuse of the chambers e-mail may result in future sanctions.

[2] Plaintiff served an identical subpoena on GoDaddy because Defendants are apparently uncertain about which entity actually hosts their websites. (Doc. 213 at 2). Plaintiff has since withdrawn that subpoena but the parties agree that it would seek identical information

A. Any document or other business record regarding the following brand names, entities, and domain names:

  Skunk

  Skunkguard

  Skunk Guard

  Skunk, Inc.

  Skunkguard.com

  Skunkbags.com

B. Any document or other business record from January 1, 2014 until present regarding Vatra, Inc. and containing the word "skunk" alone or in combination with any other words, including but not limited to "skunkguard" or "skunk guard" and "skunkbags" or "skunk bags".

C. Any document or other business record regarding Alise Jusic aka "Alis Jusic" which pertains to, is associated with, contains reference to, or is otherwise related to Skunk, Skunk Guard, and/or any other iteration of the term "Skunk."

D. Any document or other business record regarding alisej7@gmail.com which pertains to, is associated with, contains reference to, or is otherwise related to Skunk, Skunk Guard, and/or any other iteration of the term "Skunk."

E. A full MySQL database Export (in SQL Format) of the Wordpress database from 2014 and 2015 or earliest available date for "skunkguarddb," shown on the attached document numbered SKUNK002265 (attached).

F. A full MySQL database Export (in SQL Format) of the Wordpress database from 2014 and 2015 or earliest available date for the vatra.com website, *database name unavailable but can be found by looking at relevant site wp-config file*.

---

as the subpoena issued to SDS. Because any subpoena to GoDaddy is still hypothetical at this point, the Court cannot quash or modify it. However, because the subpoena (if filed) will seek identical information, the Court would expect that Plaintiff would make every effort to ensure that it does not conflict with this order.

      G. A full MySQL database Export (in SQL Format) of the Wordpress database from 2014 and 2015 or earliest available date for the skunkbags.com website, *database name unavailable can be found by looking at relevant site wp-config file*.

(*Id.* at 14–15). Plaintiff later revised Categories E, F, and G of the subpoena in the following manner:

      E. A full MySQL database Export (in SQL Format) of the earliest Wordpress[] database(s) for the http://www.skunkguard.com domain and all hosted files for http://www.skunkguard.com. Including all current live hosted files and databases as well as any relevant backups.

      F. A full MySQL database Export (in SQL Format) of the earliest Wordpress database(s) for the http://www.vatra.com domain and all hosted files for http://www.vatra.com. Including all current live hosted files and databases as well as any relevant backups.

      G. A full MySQL database Export (in SQL Format) of the earliest Wordpress database(s) for the http://www.skunkbags.com domain and all hosted files for http://www.skunkbags.com. Including all current live hosted files and databases as well as any relevant backups.

(*Id.* at 34–35).

After confirming its jurisdiction to hear the dispute over this subpoena, the Court entered an order permitting Defendants to file a motion to quash. (Doc. 206). Notably, the Court emphasized that "[t]he motion must, with exacting specificity, state the relief sought." (*Id.* at 1). The order further required Defendants to "be specific as to which categories of documents are entitled to protection." (*Id.* at 1–2 n.1). The pending motion followed.

## II.   LEGAL STANDARD

In ruling on the motion to quash, Federal Rule of Civil Procedure ("Rule") 26 and Rule 45 guide the Court's discretion. *R. Prasad Indus. v. Flat Irons Envtl. Sols. Corp.*, No. CV-12-08261-PCT-JAT, 2014 WL 2804276, at *2 (D. Ariz. June 20, 2014). Rule 26 usually allows parties to obtain discovery on any nonprivileged matter that is relevant to a

claim or defense and proportional to the needs of the case. In the third-party subpoena context, however, courts have often demanded a stronger-than-usual showing of relevance, requiring the requesting party to "demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure." *R. Prasad Indus.*, 2014 WL 2804276, at *2 (citing *Slater Steel, Inc. v. Vac-Air Alloy Corp.*, 107 F.R.D. 246, 248 (W.D.N.Y. 1985)). When considering Rule 26, the Court must also bear in mind the purpose of discovery, which is to "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

Rule 45(D)(3)(A) delineates when a court must modify or quash a subpoena. When a subpoena requires disclosure of privileged or other protected matter, or would subject the person to an undue burden, Rule 45 commands that it be quashed or modified. *See Mount Hope Church v. Bash Back!*, 705 F.3d 418, 427–28 (9th Cir. 2012) (explaining that undue burdens are those associated with complying with the subpoena). Among the factors that can cause the burden of compliance to become undue are "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, [and] the particularity with which the documents are described." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (quoting *United States v. IBM*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)). The party seeking quashal bears the burden of persuasion. *Id.*

### III. DISCUSSION

Defendants assert that each and every category of information requested in the subpoena is inappropriate. They assert that the requests in Categories A though D are overbroad in that they would require SDS to produce e-mails that are possibly privileged, confidential, irrelevant or span too much time. (Doc. 213 at 5–6). Indeed, Defendants' motion makes clear that their exclusive concern with Categories A through D's requests relates to the possibility of SDS producing e-mail communications that—whether between Defendants' employees or between Defendants and their attorneys—may be hosted by SDS.

Given the parties met and conferred (albeit, via letter), Plaintiff offers something of a remarkable response: It has "no interest in" obtaining any e-mails that SDS might store.[3] (Doc. 217 at 4). Although Category D certainly covers some e-mails, Plaintiff is interested only in communications between Mr. Jusic and SDS conducting business at arm's length, which would not be hosted by SDS at all. (*Id.* at 6). In fact, "[n]ow that Defendants [have] informed Plaintiff about e[-]mail addresses hosted by SDS," Plaintiff tells the Court it will "exclude (and would have previously excluded) the same from the scope of the subpoena." (*Id.* at 1).[4] Plaintiff further provides that it will revise the subpoena to exclude the objected-to items from its scope. (*Id.* at 2). Plaintiff nevertheless has not withdrawn the subpoena and argues that this Court should deny the motion to quash despite seeming to concede that the subpoena is overly broad in relation to what Plaintiff actually seeks. (*Id.*).

In reply, Defendants indicate that they would largely have no quarrel with Categories A though D if they were so limited. (Doc. 221 at 2). Defendants even state that Plaintiff's reply shows it is "perfectly capable of limiting the subpoena [C]ategories." (*Id.* at 3). Yet they press on and argue the Court should quash Categories A through D "in their entirety" on the basis that the language of the subpoenas is not so limited. (*Id.*).

The Court partially agrees with Defendants' reasoning. There is apparently complete agreement at this point that Plaintiff does not want—and SDS should not be made to produce—the objected-to e-mails. But the subpoena has neither been withdrawn nor revised. No matter how strenuously Plaintiff insists that it seeks only "invoices, job specs, work orders, receipts, sales history, etc.," the words in the subpoena speak for themselves

---

[3] The Court describes this response as remarkable because it is difficult to imagine how such a critical fact could not arise during a meet and confer process conducted in good faith. The Court finds that the clear failure to make an honest effort to understand the other side's position particularly egregious here because the Court has already admonished the parties for failing to comply with meet and confer requirements. (Doc. 121 at 1 n.1). Going forward, these requirements must be taken seriously.

[4] To a certain extent, this representation is not entirely accurate because Defendants raised the same points during the meet and confer process. (Docs. 217-5, 217-6). It is not belaboring the point to say that this emphatically demonstrates the importance of conducting the meet and confer process in good faith. Simply put, there was no need to waste the Court's time and client resources over this e-mail issue. Had the parties taken the time to understand each other's positions, this issue could and should have been avoided.

- 5 -

and they tell a different story. (*See* Doc. 217 at 5). Categories A through D each request "[a]ny document or other business record" containing the information that Plaintiff seeks. So formulated, that language is obviously broad enough to cover the kinds of e-mails that Defendants state SDS hosts on their behalf. SDS cannot be expected to divine that these words do not really mean what they say and that, instead of "any document," the subpoena actually requests a more limited class of documents. In other words, the Court deems what Plaintiff has told the Court about the information that it actually seeks to be tantamount to an admission that the subpoena as written is overly broad in relation to Plaintiff's need for the documents, flunks particularity, and would have SDS produce items of questionable relevance—all factors that would weigh heavily in favor of quashal or modification. *See, e.g.*, *Lewin v. Nackard Bottling Co.*, No. CV 10-8041-PCT-FJM, 2010 WL 4607402, at *1 (D. Ariz. Nov. 4, 2010) (granting Rule 45 motion where requesting party requested all documents and did not limit request to certain kinds of documents); *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 695 (D. Nev. 1994) (modifying a subpoena because the term "all agreements" could be vague and ambiguous and that compliance thereto may be burdensome).

Having made this finding, however, the Court will modify the subpoena instead of quashing it and allowing Plaintiff to go back to the drawing board. Unfortunately, in light of the history of this litigation and in view of the looming discovery deadline, the Court is constrained to conclude that modification is the best course because the parties are in agreement (at least for now) on this point. There is simply no good reason to take any action but modify the subpoena's language to conform to that agreement. Therefore, Categories A through D are each modified in the following way: The phrase "Any document or other business record" will be enlarged to say "Any document, <u>excluding e-mails hosted by SDS</u>, or other business record <u>such as invoices, job specs, work orders, receipts, sales history, etc.</u>"[5]

The Court now turns to address Defendants' other objections to Categories A

---

[5] Given the Court's modification of the subpoena, it need not address Defendants' alternative argument under the Stored Communications Act.

1 through D. Defendants also argue that Categories A, C, and D, are improper because the
2 requests lack temporal bounds. (Doc. 213 at 5–7). They seemingly do not, however, quarrel
3 with Category B, which seeks only documents from January 1, 2014, on. (*Id.* at 6). Plaintiff
4 contends that it is "unable to limit" Categories A, C, and D "because the very essence of
5 the dispute is over priority." (Doc. 217 at 7).

6         The reason for which Plaintiff served the subpoena belies its contention that its
7 requests cannot be limited in their temporal scope. Specifically, "Plaintiff issued the
8 Subpoenas to seek only evidence that corroborated or contradicted Defendants' claim of
9 2014 and 2015 online sales of its product using the disputed 'Skunk' mark." (*Id.* at 2).
10 Why, then, would Plaintiff require documents from both well-before and well-after 2014?
11 Plaintiff offers no compelling answer to that question and its ability to temporally limit
12 Category B only goes to show that it is more than capable of doing so in the other
13 Categories. Moreover, similar requests to produce documents spanning many years are
14 routinely found to create an undue burden. *See, e.g.*, *Roe v. City of San Diego*, No. CV 12-
15 0243-W(WVG), 2013 WL 12415915, at *5 (S.D. Cal. Sept. 27, 2013); *Groce v. Claudat*,
16 No. 09CV01630-BTM (WMc), 2012 WL 1831574, at *3 (S.D. Cal. May 18, 2012); *Moon*,
17 232 F.R.D. at 637. Thus, the Court will modify the timeframe for Categories A, C, and D.
18 In an abundance of caution, the Court believes it should not sweep too broadly when
19 excluding time from these Categories. Accordingly, the Court limits these Categories to
20 January 1, 2013, until present. This timeframe is well-suited to obtain the information that
21 Plaintiff seeks; namely, information related to whether Defendants began selling products
22 using the mark online in 2014.

23         Defendants also posit that Categories A, C, and D will result in SDS producing
24 information that is privileged. (Doc. 213 at 6). The Court believes that its modification to
25 Categories A through D resolves this issue too. In other words, to the extent that Defendants
26 contend that the communications contained in Exhibit D to their motion are privileged and
27 would be in SDS's possession because it hosts them, the modification excludes those e-
28 mails from the subpoena's scope. The Court notes further that while Category D does

contemplate the production of some e-mails, those e-mails will include only what Plaintiff actually seeks—e-mail communications between Mr. Jusic and SDS conducting business at arm's length. (Doc. 217 at 6). The privilege log identifies no such e-mails.

Defendants lastly argue that "Categories E through G should be narrowed so that they only seek hosted files that could be presented to percipient witnesses which include text files, images, audio files or Word documents existing from 2014[–]present for the websites: http://www.skunkguard.com, http://www.vatra.com, and http://www.skunkbags.com." (Doc. 213 at 7). The gravamen of this argument is that the information Plaintiff requests can be understood only by an expert, and Plaintiff has disclosed no expert that is capable of doing so. (*Id.*). In response, Plaintiff points out that Defendants themselves produced at least one of these records without the aid of an expert to support their position that they launched their website in 2014. (Doc. 217 at 7).

The Court has reviewed the database export that Defendants previously produced. (Doc. 217-3 at 2). The spreadsheet does, admittedly, have many cells that contain a variety of esoteric technical terms. To support the proposition that their website launched in 2014, however, Defendants highlighted one cell that should be relatively easy for most to understand. Namely, a cell marked "Creation" with a date of October 25, 2014. (*Id.*). Given the purpose for which Plaintiff requests the database exports, the Court can only conclude that it would rely on the same information. The Court is completely confident that reading a date is a skill with which the average juror is perfectly proficient. It does not "result[] from a process of reasoning which can be mastered only by specialists in the field," *Joshua David Mellberg LLC v. Will*, 386 F. Supp. 3d 1098, 1101 (D. Ariz. 2019) (quoting Fed. R. Civ. P. 701, Committee Notes on Rules—2000 Amendment), it is not a subject beyond the jury's ken, *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1046 (9th Cir. 2013) (explaining that expert testimony is not appropriate where the matter testified to is within the knowledge of the jury). Because expert testimony would not be permitted, let alone required, to read a date off of a piece of paper, the Court will not quash or modify the subpoena on this basis.

**IV.   MODIFIED SUBPOENA**

For the convenience of the parties, but most especially for non-party SDS, the Court will now redraft the subpoena including the Court's modifications:

A. Any document, <u>excluding e-mails hosted by SDS</u>, or other business record <u>such as invoices, job specs, work orders, receipts, sales history, etc., from January 1, 2013 until present</u> regarding the following brand names, entities, and domain names:

    Skunk

    Skunkguard

    Skunk Guard

    Skunk, Inc.

    Skunkguard.com

    Skunkbags.com

B. Any document, <u>excluding e-mails hosted by SDS</u>, or other business record <u>such as invoices, job specs, work orders, receipts, sales history, etc., from January 1, 2014 until present</u> regarding Vatra, Inc. and containing the word "skunk" alone or in combination with any other words, including but not limited to "skunkguard" or "skunk guard" and "skunkbags" or "skunk bags".

C. Any document, <u>excluding e-mails hosted by SDS</u>, or other business record <u>such as invoices, job specs, work orders, receipts, sales history, etc., from January 1, 2013 until present</u> regarding Alise Jusic aka "Alis Jusic" which pertains to, is associated with, contains reference to, or is otherwise related to Skunk, Skunk Guard, and/or any other iteration of the term "Skunk."

D. Any document, <u>excluding e-mails hosted by SDS</u>, or other business record <u>such as invoices, job specs, work orders, receipts, sales history, etc., from January 1, 2013 until present</u> regarding alisej7@gmail.com which pertains to, is associated with, contains reference to, or is otherwise related to Skunk, Skunk Guard, and/or any other iteration of the term "Skunk."

E. A full MySQL database Export (in SQL Format) of the earliest Wordpress[] database(s) for the http://www.skunkguard.com domain and all hosted files for http://www.skunkguard.com. Including all current live hosted files and

databases as well as any relevant backups.

F. A full MySQL database Export (in SQL Format) of the earliest Wordpress database(s) for the http://www.vatra.com domain and all hosted files for http://www.vatra.com. Including all current live hosted files and databases as well as any relevant backups.

G. A full MySQL database Export (in SQL Format) of the earliest Wordpress database(s) for the http://www.skunkbags.com domain and all hosted files for http://www.skunkbags.com. Including all current live hosted files and databases as well as any relevant backups.

V. **CONCLUSION**

Therefore,

IT IS ORDERED that Defendants Skunk Incorporated and Vatra Incorporated's ("Defendants") Motion to Quash Third-Party Subpoenas (Doc. 213) is GRANTED IN PART AND DENIED IN PART as explained in the above.

IT IS FURTHER ORDERED that Plaintiff BBK Tobacco & Foods, Inc. shall serve a copy of this order on SDS within 7 days of the date of this order.

IT IS FINALLY ORDERED that, because the motion was granted in part and denied in part, each party shall bear its own costs and expenses consistent with Rule 37(a)(5)(C). *See, e.g.*, *Keenan v. Maricopa Cty. Special Health Care Dist.*, No. 2:18-CV-1590-HRH, 2019 WL 5103082, at *4 (D. Ariz. Oct. 11, 2019); *Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, No. 17CV1943-LAB-LL, 2019 WL 3769191, at *4 (S.D. Cal. Aug. 9, 2019); *Evergreen Int'l Airlines, Inc. v. Anchorage Advisors, LLC*, No. 3:11-CV-1416-PK, 2013 WL 12321591, at *10 (D. Or. Nov. 27, 2013).

Dated this 12th day of May, 2020.

James A. Teilborg
Senior United States District Judge