**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BBK Tobacco & Foods LLP, | No. CV-18-02332-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Skunk Incorporated, et al., | |
| Defendants. | |

Pending before the Court are a motion for summary judgment and a motion for partial summary judgment.  Also pending are 4 motions to exclude or supplement evidence in the summary judgment motions.  The motions for summary judgment are fully briefed.  Nonetheless, the parties seek to preclude evidence (or add evidence) that is relied on and discussed throughout the summary judgment motions.  Thus, if any motion to preclude is granted, it would be extremely difficult to identify where each item of precluded evidence currently resides in the pending motions, responses and replies.  Further, if a motion to supplement were granted, it would fall to the Court to identify where to insert this evidence within the pending briefing.

The Court will discuss the motions to preclude or supplement as follows.

## 1.    Vapor Delight

### A.    Issue

Plaintiff seeks an order "(1) precluding Defendant Skunk, Inc. and Defendant Vatra, Inc. ("Defendants") from offering any evidence or argument concerning any alleged sales

1    of products using Defendants' SKUNK Word Mark or SKUNK Word+Design Mark

2    ("Defendants' SKUNK Marks") to an entity called Vapor Delight (or anyone associated

3    therewith) and (2) excluding the declaration of Seif Ascar (Dkt. 304-3, pages 84-87)."

4    (Doc. 316 at 2). This presents an excellent example of the issue identified in paragraph one

5    herein.  The Court has no idea where Vapor Delight (or Vapor Delight associated) sales

6    are referenced in the currently pending 2,870 pages of briefing on summary judgment.[1]

7         The heart of the parties' dispute lies in whether Defendants' disclosures were

8    adequate.  The parties paint a starkly different picture of what was actually disclosed.

9    Plaintiff complains that Defendant "hid" Mr. Ascar and Vapor Delight by not ever

10   connecting the dots that they were among the "select retailers" who (allegedly) purchased

11   Skunk products in 2014.  (Doc. 325).  Conversely, Defendants claim they disclosed Mr.

12   Ascar and Vapor Delight numerous times (Doc. 323 at 5) with sufficient specificity that

13   Plaintiff should have deduced they were customers/retailers of Defendants.  Plaintiff

14   disagrees because, while Plaintiff concedes that both names were disclosed (and Plaintiff

15   itself listed the names in its disclosures (Doc. 325 at 2 n.1)), Plaintiff claims the "facts"

16   were withheld.  Plaintiff further complains that when Defendants' representatives were

17   asked (at deposition) specifically who were the select retailers, the response was "I don't

18   know".  (*Id.*).  Yet, by summary judgment, those same deponents had refreshed their

19   recollection to where they could make avowals about these sales to Vapor Delight

20   specifically.  Defendants claim this was merely, "…not initially having perfect knowledge

21   of remembering…." (Doc. 323 at 3).

22        At bottom, Plaintiff appears to be arguing that it defies believability that someone

23   Defendants claim to have disclosed six separate times from June 27, 2019 to June 1, 2020

24   (Doc. 323 at 4-5) is someone they did not perfectly remember was the "select retailer"

25   because if they did not remember that, why were they disclosing Mr. Ascar and Vapor

26   Delight as relevant?  Defendants provide no direct response to this, instead arguing that the

27
28   [1]  The Court notes that at Doc. 301 Plaintiff filed an errata indicating that in filing its response to Defendants' motion it did not correctly organize its exhibits.  Thus, it refiled Doc. 291 at Doc. 302.  Somehow, in reorganizing the exhibits, the filing became 10 pages longer, so the Court has counted the longer version.

1  disclosures were adequate.

2         **B.     Resolution**

3         This case is subject to General Order 17-08, which is the Mandatory Initial

4  Discovery Pilot Project ("MIDP").  (*See generally* Doc. 4).  The MIDP requires:

5                 The parties must respond to the following Court-issued discovery
           requests without awaiting discovery requests from the opposing parties, and
6          at the times set forth above.
                  1.  State the names and, if known, the addresses and telephone
7          numbers of all persons who you believe are likely to have discoverable
           information relevant to any party's claims or defenses, and **provide a fair**
8          **description of the nature of the information each such person is believed**
           **to possess**. …
9                 4.  For each of your claims or defenses, state **the facts relevant** to it
           and the legal theories upon which it is based.
10
    (Doc. 4 at 7) (emphasis added).

11
          In the Response (Doc. 323) to the pending motion to exclude, Defendants did not
12
    identify a specific place wherein they identified Mr. Ascar or Vapor Delight as a
13
    customer/retailer.  Instead, Defendants left to the Court the task of going through 40 pages
14
    of discovery in this case to determine on its own whether Mr. Ascar/Vapor Delight was
15
    disclosed as a customer/retailer.  The Court has reviewed these 40 pages; nowhere in this
16
    discovery is Mr. Ascar or Vapor Delight identified as a customer or retailer.  (Doc. 323 at
17
    23-63).
18
          Further, the only place that Defendants claim there was a description of Mr. Ascar's
19
    testimony is from another case.  Disclosures in other cases do not "count" as disclosures in
20
    this case.  Moreover, the description in the other case still did not identify Mr. Ascar/Vapor
21
    Delight as a customer/retailer at any point, including 2014.  Specifically, the description
22
    from the other case stated: "Mr. Ascar is a shop owner who is likely to have discoverable
23
    information about [Defendant's] use of its SKUNK and SKUNK & Design marks and the
24
    absence of confusion between [] the parties' respective marks as used on the respective
25
    goods."  (Doc. 323 at 20).  This description no where suggests Mr. Ascar is a retailer of
26
    Defendants' products currently or dating back to 2014.
27
          Finally, the fact that Plaintiff knew of Mr. Ascar in general is insufficient to "provide
28
    a fair description of the information [the] person is believed to possess."  (*See* MIDP

1    Order).  In other words, all of Defendants descriptions of Mr. Ascar in this case merely say

2    he has information relevant to this case.  (Doc. 323 at 23-63). Such a description could be

3    used for every witness in every case ever filed in federal court.  This obviously is not a

4    "fair description" as required by the MIDP.

5         The fact that Defendants disclosed that they allegedly sold to "select retailers" (Doc.

6    323 at 63) does not cure the problem because Defendants never disclosed Mr. Ascar was

7    the "select retailer" in question until the day before the close of discovery.  The fact that

8    Defendants possessed Mr. Ascar's name as of October 14, 2019 (Doc. 323 at 26) as a

9    relevant witness placed a duty on Defendants to explain why he was a relevant witness.

10        Thus, because Defendants' disclosures we inadequate under the MIDP, all evidence

11   of sales to or by Mr. Ascar and/or Vapor Delight is precluded.

12        **2.     Lock N Load**

13             **A.     Issue**

14        Plaintiff also moves to preclude all Lock N Load sales data, which Defendants

15   presented at summary judgment by way of a summary exhibit, because Defendants did not

16   disclose voluntarily or at Plaintiff's request, the documentation underlying the summary

17   exhibit.  (Doc. 315).  Defendants argue the motion is untimely for two reasons, and that the

18   summary is nonetheless admissible because Plaintiff "agreed" to let Defendants produce it

19   in discovery.  Plaintiff responds and argues that the motion is timely, and that Plaintiff

20   never agreed to admissibility.  (Doc. 326).

21        The Court finds the motion is timely because it was filed within the appropriate time

22   period based on when the document was materially relied on in the summary judgment

23   briefing.  The Court also finds it timely because it does not seek to compel production of

24   the underlying data (which would have been due within the discovery deadline); instead it

25   seeks to preclude an exhibit on summary judgment that does not comply with the rules of

26   evidence.

27        Finally, as to the heart of the dispute, the parties agreed (during discovery) after

28   several disputes and meet and confers, that Defendants would produce a summary of sales

data, rather than underlying sales data itself.  It is undisputed that the underlying data is relevant.  There appears to be a dispute as to whether accessing the underlying data is overly burdensome.  In agreeing to this summary production, Plaintiff claims it was merely forgoing a motion to compel the underlying data; Plaintiff was never agreeing that the summary was affirmatively admissible by Defendants. (Doc. 315 at 2, citing Fed. R. Evid. 1006).  If Defendants wanted to rely on the summary, Defendants had to produce the underlying data.  Further, Plaintiff claims the summary (received late in the discovery process) contradicts Defendants earlier representations in discovery regarding sales.

### B.     Resolution

The Court agrees with Plaintiff that Defendants cannot use a summary in lieu of the underlying data to prove a fact under Federal Rule of Evidence 1006 if all underlying data is not available to the other parties (and, at trial, the Court and the jury).  Further, the Court agrees with Plaintiff that producing something in discovery, even at the request of the other party, is not effectively a stipulation that whatever is produced is admissible.[2]  Defendants decision (apparently due to an unduly burdensome objection) to not produce the Lock N Load sales data, as was their affirmative obligation under the Federal Rules of Evidence and the MIDP Order if they intended to use it, precludes them from relying on it now.  Accordingly, the motion to preclude the Lock N Load sales data summary is granted.

### 3.     Skunkguard.com

### A.     Issue

Plaintiff seeks to preclude Defendants from, "from introducing any evidence, or making any argument, that any **sales** of products using Defendants' SKUNK Word Mark or SKUNK Word+ Design Mark ("Defendants' SKUNK Marks") were made **on** Defendants' website "skunkguard.com" prior to July 15, 2015." (Doc. 317 at 2) (emphasis added).  This again presents the same problem noted in paragraph one, meaning the Court does not know where this evidence is to be found in the 2,870 pages of summary judgment

---

[2] This holding is consistent with the MIDP Order, which states, "Production of information under this General Order does not constitute an admission that information is relevant, authentic, or admissible."  (Doc. 4 at 6 ¶ 10).

briefing.  Further, the parties are again having their ships passing in the night discovery problem which the Court has noted many times before in this case, in that Defendants argue they have not offered any evidence of *sales on* the website.  Instead they offer evidence that the website was up and running prior to July 15, 2015 and that customers viewed the website as a catalog to thereafter make phone orders.  Thus, Defendants argue there is no evidence that falls within the category of "sales on" the website, which Defendants say is all Plaintiff seeks to preclude.  In sum, Defendants argue that no evidence in the record falls within the scope of what Plaintiff's move to preclude.

This dispute stems back to Plaintiff's attempts in discovery to obtain evidence regarding the Skunkguard.com website.  Initially, such discovery was propounded on Defendants who claimed that any such information was not in Defendants' possession, custody or control.  Then Plaintiff propounded discovery on GoDaddy who hosts the website.  Defendants then claimed the discovery on GoDaddy was overly broad for a variety of reasons.  The Court ruled on this issue and narrowed the subpoena mostly consistent with Defendants' objections.  (Doc. 236).

The Court then learned that notwithstanding this Court's order compelling GoDaddy's compliance with the subpoena, Defendants continued to object to the subpoena to prevent GoDaddy from complying.  The parties, as always, tell vastly different versions of what occurred.  Plaintiff states:

> …Defendants first disclosed their allegation of 2014 sales on skunkguard.com in Defendant's February 13, 2020, amended responses to BBK September 6, 2019, interrogatories.
> … The Court's May 12, 2020, Order on the motion to quash set forth the modified requests approved by the Court, in the specific language approved by the Court. (Dkt. 236 at 9-10 ("Quashal Order")).
> BBK immediately served subpoenas using the exact wording and requests approved by the Court's Quashal Order. On the same day that Court issued its Quashal Order, BBK prepared a subpoena directed to GoDaddy containing ONLY the specific requests as worded and approved by the Court's Quashal Order. (Dkt. 237). BBK served the subpoena on GoDaddy that same day, May 12, 2020. (Dkt. 245).
> Defendants instructed GoDaddy not to produce documents responsive to the subpoena and that GoDaddy collected for production. On Friday, May 22, 2020, GoDaddy made a partial production of materials GoDaddy determined were responsive to the Court-approved requests and informed BBK that it would complete its production on May 26 …BBK promptly forwarded this production to Defendants' counsel on May 23. …That same

day, Defendants objected to GoDaddy's partial production and instructed GoDaddy not to continue with the production …. Defendants also demanded that BBK's counsel destroy GoDaddy's partial production ….

Defendants took advantage of the fact that the deadline for raising discovery disputes had passed to delay GoDaddy's production. Defendants initially based their objection on the claim that GoDaddy had allegedly produced materials within the scope of what the Court had excluded in its Quashal Order…. That objection led BBK to believe that GoDaddy had produced potentially privileged hosted emails (the primary objection addressed in the Quashal Order). BBK found that unusual because the subpoena had been drafted following exactly the Court's wording designed to exclude any hosted emails. But BBK was not able to confirm Defendants' claim because BBK had not begun to review the GoDaddy production before receiving Defendants' destruction demand.

Defendants refused all proposals to withdraw their objections to production of the information GoDaddy collected. Initially and immediately, BBK suggested, as a solution, to permit Defendants' counsel to remove any improperly-produced materials…. Defendants refused….

Defendants insisted that GoDaddy discard its production and Defendants raised new objections. Once counsel finally had a call to discuss the issue, Defendants insisted that GoDaddy be asked to correct the production. By this time, Defendants had revealed that their actual concern was not potentially privileged hosted emails but that the GoDaddy documents included information concerning Defendants' websites other than those already at issue. BBK did not agree that this was a valid ground for objection, but Defendants would not budge, reflecting their knowledge that the deadline for submitting discovery disputes had passed. BBK reluctantly agreed to jointly ask GoDaddy to redact its production to remove references to those other websites. On May 28, 2020, counsel jointly requested a call with GoDaddy….

Defendants continued to interfere, knowing the Court would not intervene. On June 4, 2020, GoDaddy informed the parties that it would be able to make a partial production on June 5, 2020…. GoDaddy informed the parties that, given the request to redact and the manner in which Defendants used one GoDaddy hosting account for many websites, the production would include content for the relevant websites but not other information….

Despite having insisted on the redactions in the first place, Defendants now objected to any production if GoDaddy was not able to complete the redactions for all documents…. BBK proposed to resolve Defendants' new road-block by having GoDaddy provide the complete, unredacted production to Defendants and by permitting Defendants to produce additional materials they found helpful from that unredacted production…. BBK agreed that Defendants could have several weeks AFTER the discovery deadline to make that additional production….

Defendants refused BBK's proposal, and—without even copying BBK's counsel on the communication—again instructed GoDaddy not to produce anything…. BBK learned of that instruction on June 8, when GoDaddy responded (copying BBK's counsel) that it would produce the documents absent a filed motion to quash the subpoena…. Although Defendants were well aware that the deadline for submitting any discovery disputes had passed, Defendants indicated to GoDaddy that Defendants intended to file a motion to quash….

Defendants filed an improper motion in order to further delay GoDaddy. On June 8, in order to ensure that GoDaddy did not produce its documents, Defendants filed a motion requesting leave to file a motion to quash…. In that motion, Defendants did not inform the Court that GoDaddy

had been prepared to produce responsive documents on May 26, or again, on June 5. Instead, Defendants stated that BBK was attempting "to effectuate discovery after the Court's discovery cutoff." … Defendants did not inform the Court that the subpoena strictly complied with the Court's Quashal Order. Instead, Defendants led the Court to believe that BBK "had issued a subpoena that exceeded the scope of the subpoena this court had permitted."
…

Defendants rely on the alleged e-commerce capability of the skunkguard.com website in 2014 as evidence of Defendants' alleged use of the SKUNK mark in commerce….

(Doc. 317 at 2-6).

Defendants state:

…GoDaddy made a small test production of about 950 pages on May 22, 2020, in advance of a massive 40 GB production that it planned to make on May 26, 2020….
…the large majority of GoDaddy's produced documents in its initial small test production of about 950 pages on May 22, 2020 were clearly within the information denied and quashed by the Court….

From the test production, it was apparent that GoDaddy was not narrowing the information in its possession in any of the ways dictated by the Court. … Instead, it was planning to produce all the documents it could easily locate without filtering them in any way. It was thus on the verge of making a production that included privileged information, private information, and unlimited irrelevant information (including documents from Mr. Jusic's daughter's personal website and other websites containing proprietary information entirely unrelated to this case) – all things the Court had sought to avoid. The reason was apparent: GoDaddy was being pressured by Plaintiff's counsel, and it lacked time and resources to conduct the required filtering.

Once Defendants learned of all the above on May 23, 2020, Defendants necessarily objected to GoDaddy's unfiltered, unnarrowed overproduction, which did not adhere to the any of the Court's directives... Moreover, because 40 GB represents an enormous trove of data, there was no way for Defendants, or anyone, to review the production to find documents within the scope of the subpoena prior to the discovery cut-off…

In the handful of days that remained before the Discovery Cut-off, Defendants communicated with Plaintiff and GoDaddy trying to find a solution to the problem of GoDaddy's inability to meaningfully filter data according to the subpoena…. But, just as the discovery cut-off arrived, an additional problem was discovered. While GoDaddy reported that it had found a way to limit a production to a sample of documents related to two of the three relevant websites, it also reported that it had not been able to locate documents beyond those that were easily accessible given the time constraint imposed by Plaintiff. Notably, the production would not include any database files and would be incomplete in other ways as well….

At this late date, it was Defendants who offered Plaintiff a solution: an agreement to allow the limited production of documents related to skunkgaurd.com and vatra.com to go forward in exchange for an affidavit or stipulation stating that the documents GoDaddy had been able to produce in the tight timeframe were incomplete in certain respects…. Plaintiff, however, rejected the compromise. …. At GoDaddy's insistence, the parties then prepared to bring the dispute back before the Court…. The Court, however, responded by quashing the subpoena and all outstanding discovery, the cut-

off having passed…

(Doc. 327 at 8-9).

Plaintiff replies and alleges:

Defendants' insistence that GoDaddy redact responsive documents to remove information concerning websites other than vatra.com, skunkguard.com or skunkbags.com—something not required by the Court's Quashal Order (Dkt. 236)—was improper. The common circumstance of responsive documents containing both relevant information and other information provides no basis for withholding or redacting those documents. As long as the document contains relevant, responsive information it must be produced. To the extent the "other" information is private or proprietary, the Court's Protective Order (Dkt. 136) provided the proper means for protecting such information, as BBK advised Defendants at the time. Further, according to GoDaddy, the responsive documents included "other" information due to Defendants' own decision to commingle multiple websites within a single hosting account. (Dkt. 317-1, p. 86 (Ex. 11)).

(Doc. 328 at 3-4).

The Court, recognizing that Defendants may have evidence on which they wish to rely that was not properly disclosed, gave Defendants the opportunity cure and disclose such evidence even at this late date.  Specifically, on August 14, 2020, the Court ordered,

Because Defendants interfered with GoDaddy's attempts to comply with the Court approved subpoena, in responding to [the] to-be-refiled Doc. 310, Defendants must produce all documents in GoDaddy's possession proving the use of the skunkguard.com website in 2014, or have Mr. Jusic provide a supplemental declaration that no such documents are in GoDaddy's possession. The Court understands that Defendants have taken the position that such documents to prove Mr. Jusic's statements are not in Defendants' possession, custody, or control. However, by Mr. Jusic declaring under oath that he knows the contents of the documents (from back in 2014), the Court deems this to an admission that he has access to the documents sufficient for them to be in his possession, custody or control such that he could sign a declaration under oath as to his personal knowledge of their contents. Notably, Mr. Jusic did not state "to the best of his recollection", Mr. Jusic states as a fact that the website was operational in October 2014. Conversely, if Mr. Jusic's sole basis for this knowledge is what he was told by someone else in an email, and not something within his personal knowledge, he may withdraw his declaration on this point.

(Doc. 314 at 2).

Defendants completely ignored the Order at 314.  Instead, Defendants argue that they have evidence other than Mr. Jusic's declaration to show the Skunkguard.com website was operational in 2014.  It is undisputed that at least with respect to GoDaddy's "partial production" these documents were in Defendants possession, custody, and control as of

May 22, 2020.  Under the MIDP, Defendants has a duty to affirmatively disclose them as soon as they received them.  (Doc. 4 at 6 ("The duty to provide mandatory initial discovery responses set forth in this order is a continuing duty, and each party must serve supplemental responses when new or additional information is discovered or revealed.")).  This alone is a basis for precluding Mr. Jusic's testimony regarding the Skunkguard.com website.

Plaintiff also argue that Defendants assertion that they have "other evidence" that the Skunkguard.com website was operational in 2014 is false. (Doc. 328 at 5-6).  First, Plaintiff claims that the "Wayback view" shows the Skunkguard.com website was operational in 2016, not 2014, and that Defendants and their counsel are knowingly and intentionally lying to the Court in representing the Wayback view shows 2014.  Second, Plaintiff claims Defendants falsely represent that Exhibit M (Doc. 304-2, pp. 113-115) shows the website was operational in 2014.  (Doc. 328 at 6).  Plaintiff also argues that it has moved to strike this evidence for evidentiary reasons. (*Id.*) Next, Plaintiff argues Defendants mischaracterize the testimony of Plaintiff's employee Mr. Marquardt.  (*Id.*)

### B.   Resolution

The MIDP requires:

3. **List** the documents, electronically stored information ("ESI"), tangible things, land, or other property **known by you to exist, whether or not in your possession, custody or control,** that you believe may be relevant to any party's claims or defenses. To the extent the volume of any such materials makes listing them individually impracticable, you may group similar documents or ESI into categories and describe the specific categories with particularity. **Include in your response the names and, if known, the addresses and telephone numbers of the custodians of the documents, ESI, or tangible things, land, or other property that are not in your possession, custody, or control.** …

(Doc. 4 at 7) (emphasis added).

When Defendants filed their initial mandatory discovery responses, they were required to disclose GoDaddy as the entity with possession, custody and control of the Skunkguard.com website.  Those responses were due June 27, 2019.  All of the discussion of whose fault it was that Plaintiff did not serve the subpoena sooner, or whether Defendants interfered with compliance, or whether GoDaddy rightly or wrongly delayed

in responding is ultimately irrelevant.  It was Defendants affirmative obligation to disclose both the existence of these documents, and the "facts" underlying their theory that the Skunkguard.com website was in use in 2014, with their initial MIDP responses.

Moreover, the Court finds that Defendants' continued objections to the subpoena after the Court ruled it could be served were baseless.  First, the Court agrees with Plaintiff that the fact that the subpoena was returning information that was not relevant to this case because Defendants commingled various websites is not a basis to oppose a subpoena *after* the Court approves it.  If Defendants had this objection, they needed to raise it in their motion to quash.  Further, the fact that discovery returns ultimately irrelevant documents is not a basis to oppose discovery of the relevant documents as well.

Additionally, Defendants (unconfirmed) allegation that GoDaddy was producing discovery outside the scope of the subpoena may be a reason to seek litigation against GoDaddy, but it is not a basis to interfere with Plaintiff subpoena and block production of even the documents that undisputedly fell within the subpoena.  Thus, Defendants' bases for interfering with the subpoena are without merit.

Had Plaintiff been successful with its subpoena, Defendants might be able to argue that their initial-disclosure failures did not prejudice anyone.  But for reasons that are attributable to Defendants, Plaintiff was denied discovery on this topic; a topic on which Defendants now offer evidence at summary judgment.  It was Defendants' affirmative obligation to disclose the existence evidence initially under the MIDP, and the actual evidence at least as of May 22, 2020.  Defendants failed to do so.  The motion to exclude will be granted. Defendants will be precluded from offering any evidence of sales via the Skunkguard.com website before March 2016 (when Plaintiff admits it received a disclosure of relevant supporting documentation).  This preclusion includes sales *on* the website and sales stemming from an unidentified, hypothetical purchaser viewing the website and placing a telephone order.  This preclusion further includes arguing the website was operational via any testimony of Defendants' witnesses because Defendants cannot cure, by self-serving testimony, the absence of ESI evidence due to Defendants' failure to

disclose such evidence.

However, it appears that Plaintiff does not dispute that the Wayback exhibit, Exhibit M to Doc. 304, and Mr. Marquardt's testimony were all properly disclosed. Plaintiff merely takes issue with the content and meaning of these pieces of evidence. This exceeds the scope of a motion to preclude for non-disclosure as Plaintiff makes no argument of non-disclosure.[3]

### 4.    Motion to Supplement

Because the Court will grant the motions to preclude, the Court will deny the motion to supplement as moot.

### 5.    Summary Judgment Filings

As the Court has stated above, the Court does not know where in the summary judgment briefing the precluded evidence lies. Accordingly, the Court will make the parties re-file as specified below. In the re-filings, the prior page limits will control. Further, the Court will not permit any deviations from Local Rule 7.2(m). In the re-filings, Defendants cannot rely on any evidence precluded herein either in the filings themselves or the exhibits.

**Conclusion**

**IT IS ORDERED** that the Motion to Preclude the Lock N Load Summary (Doc. 315) is granted as specified above.

**IT IS FURTHER ORDERED** that the Motion to Preclude the Alleged Sales to Vapor Delight and Seif Ascar declaration as it relates to Vapor Delight (Doc. 316) is granted as specified above.

**IT IS FURTHER ORDERED** that Motion to Preclude Evidence or Argument

---

[3]   While the Court will not preclude the Wayback view, the Court feels it must comment on the allegations of overt and intentional misrepresentation regarding the content of this exhibit. (Doc. 328 at 4 ("Defendants and Defendants' counsel know that is false"); Doc. 328 at 5 ("Defendants and their counsel know Exhibit 1 shows the skunkguard.com website as archived on March 16, 2016—NOT December 2014 as they affirmatively (and knowingly) misrepresent to this Court" (emphasis omitted))). Under no circumstances should an attorney knowingly lie to a Court; and conversely no attorney should make such a serious accusation as a matter of hyperbole or exaggeration. If this issue persists, the Court will likely refer the matter to the State Bar of Arizona (and anywhere else counsel is admitted).

concerning the Skunkguard.com website prior to July 2015 (Doc. 317) is granted as specified above.

**IT IS FURTHER ORDERED** that the Motion to Supplement (Doc. 321) is denied as moot.  The sealed, lodged response (Doc. 330) shall remain lodged under seal.

**IT IS FURTHER ORDERED** that the Motion to Seal (Doc. 277); the Motion for Partial Summary Judgment (Doc. 280) and the Motion to File Non-Electronic Exhibits (Doc. 289) remain pending.

**IT IS FURTHER ORDERED** that the response at Doc. 304 and reply at Doc. 320 are stricken.  Defendants shall refile their response without any precluded evidence or argument within 7 days.  Plaintiff shall refile its reply within 7 days of the response being filed.

**IT IS FURTHER ORDERED** that the related motions to seal (Docs. 307 and 308) are denied as moot without prejudice.  The filings lodged under seal (Docs. 293, 294 and 305) shall remain lodged under seal.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (Doc. 281), the response (Doc. 291 and 302) and the reply (Doc. 322) are stricken. Defendants shall refile their motion within 14 days, the response is due in 7 days and the reply is due in 7 days.  These re-filings shall not include any precluded evidence.

**IT IS FURTHER ORDERED** that the related motions to seal (Docs. 283 and 295) are denied as moot without prejudice.  The filings lodged under seal (Docs. 282, 296, 297, 298, 299, and 300) shall remain lodged under seal.

Dated this 2nd day of September, 2020.


James A. Teilborg
Senior United States District Judge

- 13 -